**Gordon W. COOKE, Plaintiff-Appellee,**

v.

**ORANGE BELT DISTRICT COUNCIL OF PAINTERS NO. 48, an unincorporated association and labor organization, et al., Defendants-Appellants (two cases).**

**Nos. 74–2718 and 74–2719.**

United States Court of Appeals, Ninth Circuit.

Jan. 21, 1976.

---

Disclosure Act, 29 U.S.C. § 401 et seq. (the "Act"). In brief, Cooke contends that the District Council violated the Act by wrongfully transferring his job location to El Centro, California in retaliation for his support of a losing union candidate.

Cooke prayed for injunctive relief restoring him to his former jobsite, Riverside, California, and for punitive and compensatory damages. A hearing was held concerning only the liability aspect of the case. On April 1, 1974, the trial judge, after securing a waiver of findings of fact and conclusions of law from both parties, entered an injunction requiring the union to restore Cooke to his former jobsite. On July 26, 1974, the judge modified the injunction to prevent the union from ousting Cooke from his job pursuant to intra-union disciplinary proceedings. On August 13, 1974, the damage phase of the trial was held and the judge awarded Cooke compensatory damages, punitive damages and attorney fees. Thereafter on August 27, 1974 the reinstatement of Cooke was suspended by the district court and the District Council agreed to pay all wages and fringe benefits to Cooke pending the disposition of this appeal.

In this appeal the District Council insists (1) that the Act is not applicable to the facts of this case, (2) that even if applicable the Act is not available to Cooke because he failed to exhaust the internal appellate remedies available under the District Council's constitution, (3) that the National Labor Relations Board has exclusive jurisdiction with respect to this dispute, (4) that punitive damages do not constitute "appropriate relief" within the meaning of the Act (i. e., 29 U.S.C. § 412), and (5) that the July 26, 1974 modification of the injunction was improper for numerous reasons.

We hold that the Act may be applicable to the facts of this case, that whether internal appellate remedies must be exhausted before recourse to the Act is

Herbert M. Ansell (argued), Los Angeles, Cal., for defendants-appellants.

David Moore (argued), Reid, Babbage & Coil, Riverside, Cal., for plaintiff-appellee.

## OPINION

Before BROWNING and SNEED, Circuit Judges, and RENFREW,* District Judge.

SNEED, Circuit Judge:

Plaintiff Cooke brought suit against the defendant unincorporated labor organization (the "District Council") and alleged violations of several sections of the Labor-Management Reporting and

* Honorable Charles B. Renfrew, United States District Judge for the Northern District of California, sitting by designation.

possible is a matter of judicial discretion, that the National Labor Relations Board does not have exclusive jurisdiction with respect to this dispute, and that punitive damages may constitute appropriate relief. However we also hold that the present record is inadequate to determine whether internal appellate remedies have been exhausted and to permit a reasoned review of the trial court's April 1, 1974 injunction or its modification on July 26, 1974. As a consequence we must reverse and remand for further proceedings designed to supply the deficiencies which at present preclude a proper review of these actions. During these proceedings and until the termination of all proceedings, appellate as well as trial, with respect to this case, or until June 30, 1976, whichever occurs first, Cooke shall continue to receive from District Council all wages and fringe benefits applicable to his former jobsite. Reinstatement of Cooke to his former jobsite is stayed until further order of this court.

## I.

### Factual Background.

Cooke had been active for many years in the affairs of the District Council which is composed of nine affiliated local unions scattered throughout Southern California. Cooke serves as a business representative of the District Council, and is a member of Painters Local Union 286, one of the nine affiliated local unions.

The District Council employs a total of seventeen business representatives. Its function is to represent affiliated union employees in their dealings with employers, and to seek improved wages, hours, and other working conditions in the painting and drywall industry.

In June, 1973 elections were held throughout the District Council for the positions of Executive-Secretary and business representatives. Cooke was re-elected business representative. Cooke supported the incumbent, Donald McNeel, against George Hartmann for the post of Executive-Secretary. Hartmann was elected.

Prior to this election, Cooke, as a business representative, was assigned to service the membership of Local 286 in Riverside County. Shortly after the election Cooke was reassigned to serve as business representative for Painters & Allied Trades Local No. 313, in El Centro, California, a desert location approximately 167 miles from Cooke's residence.

## II.

### Retaliatory Assignment of a Union Official As "Discipline" Within the Act.

■ Over a decade ago this court held that sections 101(a)(1) and 101(a)(2) of the Act (29 U.S.C. § 411(a)(1) and (a)(2)), which guarantee "every member" the right to engage in intra-union political activity, were applicable to officers of unions. *Grand Lodge of International Ass'n. of Machinists v. King,* 335 F.2d 340, 344 (9th Cir.), *cert. denied,* 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964). Moreover, this court has held that the discharge from union office of a union member because he supported an unsuccessful candidate in a union election constitutes "discipline" within the meaning of section 609 of the Act (29 U.S.C. § 529). *Id.* at 344–47. Section 609 makes it unlawful for a union "to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter."

Our view regarding the application of section 609 to discharge from union office because of intra-union political activity has not been followed by certain other circuits. *See Wambles v. International Bro. of Teamsters, Chauffeurs, Etc.,* 488 F.2d 888 (5th Cir. 1974); *Sheridan v. United Brotherhood of Carpenters,* 306 F.2d 152 (3d Cir. 1962). These circuits have reasoned that effective implementation of the policies of elected union officials requires that these officials have the right to remove those officeholders whose previous intra-union

political activity indicates a lack of sympathy with such elected officials or their policies.[1] However, we do not stand alone. Recently in *Wood v. Dennis,* 489 F.2d 849 (7th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974) the Seventh Circuit sitting en banc embraced the view expressed in *King.* Other courts have similarly so held. *Gabauer v. Woodcock,* 520 F.2d 1084, 1091 (8th Cir. 1975); *Salzhandler v. Gaputo,* 316 F.2d 445 (2d Cir.), *cert. denied,* 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963); *Gleason v. Chain Service Restaurant,* 300 F.Supp. 1241 (S.D.N.Y.1969), *aff'd,* 422 F.2d 342 (2d Cir. 1970); *Retail Clerks Union, Local 648 v. Retail Clerks Int. Ass'n.,* 299 F.Supp. 1012 (D.D.C.1969); *DeCampli v. Greeley,* 293 F.Supp. 746 (D.N.J.1968); *Gulickson v. Forest,* 290 F.Supp. 457 (E.D.N.Y.1968); *George v. Bricklayers, Masons, Etc.,* 255 F.Supp. 239 (E.D.Wis. 1966); *see* Beaird and Player, *Free Speech and The Landrum-Griffin Act,* 25 Ala.L.Rev. 577, 586 (1973).

■ The issue before us is whether the teaching in *King* should be extended to job reassignments of union officials initiated to retaliate against such officials for intra-union political activity. We hold that it should. In reaching this result we are aware that the proviso set forth in section 101(a)(2) recognizes that the exercise by a union member of his rights guaranteed by the Act shall not be permitted "to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member towards the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." We are also aware that the concern for administrative coherence, which had led some courts to reject *King,* is more substantial when the principal, or perhaps only, tangible manifestation of alleged improper discipline is the reassignment of an officer who supported a losing candidate in a union election. A certain number of such reassignments very likely will occur following the election of certain new officers even in unions deeply committed to the values which animate sections 101(a)(1) and (a)(2). The complaining union official who asserts that his reassignment constitutes improper discipline must demonstrate that it reasonably cannot be related to a legitimate desire of the elected officials to secure a structure of job assignments that will permit them to manage the union in accordance with the mandate of their election. This burden of persuasion is not met merely by showing that the complaining official op-

---

1. Commentators have pointed out that *King* and the cases which follow it should not be read to preclude the removal from office or reassignment of union officials who have manifested philosophical disagreement with, or personal disloyalty to, high-level officials upon whom rests the ultimate responsibility for conducting the affairs of the union. Such removal or reassignment may be necessary to preserve the strength and effectiveness of the union. *See* Beaird and Player, *Free Speech and The Landrum-Griffin Act,* 25 Ala.L.Rev. 577, 586–88 (1973). *Cf.* Kroner, *Title I of the LMRDA: Some Problems of Legal Method and Mythology,* 43 N.Y.U.L.Rev. 280, 293–95 (1968). Bok and Dunlop, in *Labor in the American Community,* pp. 90–91 (1970) have observed with respect to the Landrum-Griffin Act:

   "With the passage of the Landrum-Griffin Act, the issue of union democracy should move away from broad legislative reform to a host of particular questions that vary greatly from one labor organization to an-other. Should both the local business agent *and* the assistant business agent be elected, or should the latter be appointed to ensure continuity and experience? What types of decisions should be subject to ratification? Should elections be held every year or every two or three years? Should the elections occur close to contract negotiations or will this force union officials to take irresponsible positions at the bargaining table? Few of these matters are fit subjects for legislation, and most should be judged according to the special circumstances of the particular union involved. In every case, the question should be, not whether any given change will make the union more democratic, but whether it will serve the ends of the modern union—to respond to the interests of the membership, to promote them effectively, to deal fairly with individuals and minorities within its ranks, and to exhibit a due regard for legitimate interests of those beyond its walls."

posed the election of an official who after being elected to the office obtained the reassignment of the complainant. To constitute "discipline" within the meaning of section 609 the reassignment must be shown to be retaliatory. When so shown the reassigned union official has established a violation of section 609 and is entitled to appropriate relief in a civil action pursuant to section 102 (29 U.S.C. § 412) of the Act.

### III.
### Exhaustion of Internal Appellate Remedies.

■■■ The issue whether an aggrieved official must first exhaust the internal appellate remedies before initiating a civil action pursuant to section 102 has been characterized by this court as a matter of judicial discretion. *Buzzard v. Local Lodge 1040 International Association of Mechanics and Aerospace Workers,* 480 F.2d 35 (9th Cir. 1973). It follows that the trial court may choose not to require an exhaustion of internal remedies when to do so would be futile or when the available remedy is inadequate. Section 101(a)(4), 29 U.S.C. § 411(a)(4), requires no more. *Cf. Detroy v. American Guild of Variety Artists,* 236 F.2d 75 (2d Cir. 1961). While it is clear that Cooke made some efforts to obtain relief within the union, for reasons which are set forth in Part VI of this opinion, we cannot determine whether the trial court acted properly within its sound discretion in failing to require further exhaustion of such remedies.

### IV.
### Scope of National Labor Relations Board Jurisdiction.

■■ The contention by the District Council that the conduct of which Cooke complains constitutes an unfair labor practice under section 8(a) of the National Labor Relations Act (29 U.S.C. § 158(a)) and that as a consequence the National Labor Relations Board has exclusive jurisdiction is without merit. Our decision in *King* recognized that the

rights conferred by the Act under which Cooke is proceeding are cumulative. 335 F.2d at 347. Therefore, the Board does not have exclusive jurisdiction.

### V.
### Punitive Damages.

We need not devote extensive discussion to the District Council's contention that punitive damages are not allowable under the Act. While this court has held that "emotional distress, standing alone" is not a sufficient basis for awarding damages under the Act, *International Brotherhood of Boilermakers, Etc. v. Rafferty,* 348 F.2d 307, 315 (9th Cir. 1965), we are not persuaded that under no circumstances may punitive damages constitute "appropriate" relief within the meaning of section 102 of the Act. We recognize that in *Rafferty* we suggested that the term "relief" refers more comfortably to equitable remedies than to money damages. *Ibid.* Moreover, it is acknowledged that some courts have denied the recovery of punitive damages. *Magelssen v. Local Union No. 518, Operative Plasterers, Etc.,* 240 F.Supp. 259 (W.D.Mo.1965); *Burris v. Int'l. Brotherhood of Teamsters,* 224 F.Supp. 277 (W.D.N.C.1963).

■■ We believe, however, that the rule adopted by the Fifth Circuit in *International Brotherhood of Boilermakers Etc. v. Braswell,* 388 F.2d 193 (5th Cir.), *cert. denied,* 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968) is preferable. In *Braswell* that court, speaking through Judge Wisdom, held that awarding punitive damages under appropriate circumstances would serve "a deterrent to those abuses which Congress sought to prevent". *Id.* at 200. Appropriate circumstances are limited to those in which the labor organization has acted with actual malice or reckless or wanton indifference to the rights of the aggrieved union member. Such circumstances should not be assumed to exist in every case in which liability under section 609 exists. Proof of such circumstances requires a showing of more than mere liability under the Act.

## VI.

### Inadequacy of Present Record.

In the ordinary case we would now turn to applying the principles set forth above to the facts of the case as revealed by the record before us. In this case, however, the record simply does not permit a reasoned application of these principles. The reason for our inability is, as pointed out above, that the trial court *prior* to promulgating the April 1, 1974 injunction solicited oral waivers of findings of facts and conclusions of law. Without such findings and conclusions we are unable to determine whether the principles set forth in this opinion were applied properly by the trial court.

Moreover, we are disinclined to permit the waiver under the circumstances of this case to excuse a failure to comply with Rule 52(a) Fed.R.Civ.P. Our reluctance is based in part on the view that union officers, who are not entitled to the protections of section 101(a)(5)[2] when the "discipline" does not affect their "status qua union member", *Martire v. Laborers Local 1058,* 410 F.2d 32, 35 (3d Cir.), *cert. denied,* 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969), should be afforded the protection that the necessity to prepare findings of fact and conclusions of law provides. We are not prepared to assert that under no circumstances in a case of this sort can there be a waiver of such findings and conclusions. Where, however, the waiver is sought by the trial judge prior to the announcement of his decision we are not inclined to treat the waiver as being entirely voluntary. This stigma of possible involuntariness, together with our very specific need for such findings and conclusions to enable us to perform our review function properly, requires that we reverse the decision of the trial court and remand for further proceedings consistent with this opinion.

The absence of findings of fact and conclusions of law also makes it impossible for us to review properly the District Council's contentions that internal appellate remedies were not exhausted by Cooke and that punitive damages are improper under the circumstances of this case.

Finally, the record does not enable us to review properly the July 26, 1974 modification of the injunction which prevented the District Council from removing Cooke from his post and barring him from holding such post for life. The trial court's modification also directed that the District Council retain Cooke in his post as business representative at Riverside until the next election (June 30, 1976) or until his expulsion had been reviewed by a court of competent jurisdiction. As previously indicated, the reinstatement of Cooke was suspended on August 27, 1974 and the District Council agreed to pay all wages and fringe benefits to Cooke pending the disposition of this appeal. While the record makes clear that trial judge regarded the District Council's efforts to oust Cooke from his union office by resorting to internal procedures which charged Cooke with several offenses, including the unauthorized use of treasury funds and assault upon another union member, as steps taken to subvert and nullify his April 1, 1974 injunction, the record also indicates that hearing which accompanied the July 26, 1974 modification did not involve a reasonably extensive exploration of the good faith and legitimacy of the charges against Cooke.

The result is that we cannot determine whether the July 26, 1974 modification was proper or not. This places this court in an awkward position. To do justice to all parties we believe the proper procedure is, first, to reverse the trial court's disposition of this case and remand for further proceedings consistent with this opinion and, second, to direct that during these proceedings, appellate as well as trial, or until June 30, 1976, whichever

---

**2.** Section 101(a)(5) requires that union disciplinary proceedings meet certain minimum standards of due process. *See generally* Beaird and Player, *Union Discipline of Its Member-* *ship Under Section 101(a)(5) of Landrum-Griffin: What is "Discipline" and How Much Process is Due?,* 9 Ga.L.Rev. 383 (1975).

occurs first, Cooke shall continue to receive from District Council all wages and fringe benefits applicable to his Riverside jobsite, and, third, to direct that reinstatement of Cooke to the Riverside jobsite be stayed until further order of this Court.

Reversed and remanded.