Doris **RUSSELL**, Plaintiff-Appellant,

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Celia Stevenson, Defendants-Appellees.**

No. 81–5879.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1982.

Decided Dec. 16, 1983.

Brad N. Baker, Baker & Burton, Hermosa Beach, Cal., for plaintiff-appellant.

Richard T. Davis, Adams, Duque & Hazeltine, Pasadena, Cal., for defendants-appellees.

Before FLETCHER, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge.

Doris Russell sued in California Superior Court to recover damages allegedly resulting from the termination of her employment with Massachusetts Mutual Life Insurance Company (Mutual). She also sought damages allegedly resulting from the improper processing of her claim for employee disability benefits. Russell's complaint asserted several causes of action based on Mutual's handling of her disability benefits, including claims for breach of the statutory covenant of good faith and fair dealing under Cal.Ins. Code § 790.03(h)(5) (West Supp.1982),[1] and breach of fiduciary duty. Russell also asserted a claim for breach of her employment contract and of the implied contractual covenant of good faith and fair dealing. Finally, she alleged the intentional and negligent infliction of emotional distress in connection with both the handling of her disability benefits and the termination of her employment. The relief sought by Russell included both compensatory and punitive damages.

Mutual removed the action to federal district court, alleging that Russell's disability causes of action relating to her benefits were preempted by the Employee Retirement Income Security Act of 1974 (ERISA),

---

1. § 790.03(h)(5) prohibits, as an unfair and deceptive practice in the business of insurance, a failure to attempt "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

29 U.S.C. § 1001 *et seq.*[2] Mutual then moved for summary judgment as to all claims. Russell opposed the motion, contending that the state causes of action relating to her disability payments were not preempted by ERISA. She also argued that if ERISA preemption applied, her causes of action could be brought under ERISA, and that compensatory and punitive damages were available under that statute. She contended that compensatory damages were not limited to any claimed loss of benefits. Russell maintained that material questions of fact existed both as to the claims based on the disability payments and those related to the termination of her employment. Finally, she urged that her claims for the infliction of emotional distress were not preempted under either ERISA or the California Workers' Compensation statute. Cal.Lab.Code §§ 3600–3601 (West Supp.1982). Russell also expressed a desire to amend her complaint to add causes of action under 29 U.S.C. § 1132(c) (1976) and 29 C.F.R. § 2560.503–1(h) (1981), alleging that her disability claim had not been reviewed in a timely manner.[3]

The district court granted summary judgment in favor of Mutual as to all claims.[4] In determining that Russell was not entitled to relief, the court ruled, as a matter of law, that ERISA governed Russell's claims relating to the benefit plan and preempted all state actions relating to those claims. In addition, the court concluded (1) that Russell's claim for extracontractual damages and punitive damages arising out of the denial of her disability claim was barred under ERISA; (2) that Mutual complied with the provisions for review of ERISA claims pursuant to 29 C.F.R. § 2560.503–1(h) and rendered a timely decision on Russell's appeal; (3) that Mutual did not breach the employment contract or any covenant of good faith and fair dealing in connection with the termination of Russell's employment; and (4) that Cal.Lab.Code §§ 3600–3601 (West Supp.1982) provided the exclusive remedy for intentional or negligent infliction of emotional distress arising out of the termination of employment.

We agree with the district court that Russell's state law causes of action based on Mutual's handling of her disability claim are preempted by ERISA. We hold, however, that a cause of action exists under ERISA for a breach of fiduciary duty based on an alleged improper or untimely handling of benefit claims. We also hold that ERISA permits the award of compensatory damages proximately caused by such a breach of fiduciary duty and that such damages are not limited to the amount of any

2. Both parties acknowledge that the plan under which Russell seeks benefits is an ERISA regulated plan. *See* 29 U.S.C. §§ 1002, 1003.

3. 29 U.S.C. § 1132(c) requires a plan administrator to comply with a request by a participant for certain information within 30 days of such request. 29 C.F.R. § 2560.503–1(h) requires a fiduciary to "promptly" render a decision on a claim for benefits, setting a 60 day limit or, under special circumstances, 120 days from the plan's receipt of the request for review in which to render its decision.

4. Because no motion or other objection to removal was ever made by any party, we need not consider the question that would otherwise be presented here: whether this case was properly removed pursuant to 28 U.S.C. § 1441. The rule governing an appellate court's inquiry subsequent to removal was stated by an unanimous Court in *Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972): "... [w]here after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." While we acknowledge that *Grubbs* differs from the case before us because there the state court's original exercise of jurisdiction was proper, that distinction is not controlling; the principle announced by the Supreme Court in *Grubbs,* applies regardless of whether the state court had jurisdiction over the matter when it was originally filed. The *Grubbs* rule has been specifically adopted by this circuit in cases where the merits are reached and determined on a motion for summary judgment. *Stone v. Stone,* 632 F.2d 740 (9th Cir.1980) (citing cases). *See also Lockwood Corp. v. Black,* 669 F.2d 324 (5th Cir. 1982). Because we hold *infra* that appellant stated a valid cause of action under ERISA, the district court would have had original jurisdiction over appellant's claim had it originally been filed in that court.

benefit loss. We further hold that, in appropriate circumstances, the statute allows the granting of punitive damages. Next we hold that summary judgment was improper both as to Russell's claims regarding the benefit plan and her pendent state claims regarding the termination of her employment. Finally, we reverse the district court's holding that Russell's exclusive remedy for the intentional infliction of emotional distress resulting from her termination of employment is under the California Workers' Compensation statute, Cal.Lab. Code §§ 3600–3601 (1982).

## BACKGROUND

Russell was employed by Mutual for 15 years as a group claims examiner in Mutual's Los Angeles office. In May 1979, she took a leave of absence because of a disabling back ailment allegedly caused by stress. Russell submitted a report from her chiropractor, Dr. Allred, in support of her claim for disability benefits under Mutual's Employee Salary Continuance Plan (ESCP), and Mutual started to pay benefits under two plans, the ESCP and the Employee Disability Plan (EDP). The ESCP is funded from the assets of the company and provides disability benefits based upon a percentage of the employee's salary. The EDP provides benefits only if the employee is disabled for at least eight weeks and has exhausted all benefits under ESCP. Neither plan involves an insurance policy. Both plans qualify as benefit plans under ERISA. *See supra* note 2.

In August 1979, Russell's claim for disability was taken before Mutual's Disability Committee, composed of Mutual's chief medical director and four other officers of the company.[5] Noting that Russell had taken leaves of absence in 1967 and 1977 due to psychiatric and psychosomatic illnesses causing back pain, the Committee recommended that an independent medical examination be performed by an orthopedic specialist, Dr. Rosco, to verify Russell's injury. On September 18, 1979, Dr. Rosco examined Russell and concluded that she was not, from an orthopedic standpoint, physically disabled. Based solely on this report, the Committee determined that Russell's disability salary benefits should be terminated.

Mutual also decided to fire Russell. Mutual argues that this decision was based on an understanding by Cecilia Stevenson, Russell's supervisor, that Russell was unwilling to relocate to the new group claims department in Hacienda Heights, California. Russell contends that she was never asked directly about her intentions regarding the new office, and that she never stated that she definitely would not relocate. On October 17, 1979, Russell was advised by letter that both her salary continuance benefits and her employment would be terminated.

On October 22, 1979, Russell sent a letter to Mutual requesting an appeal of the decision as to salary continuance benefits. She maintained that her benefits claim should be reviewed on the basis of her entire medical record, psychological as well as physical. The request for appeal was received by the plan administrator, Robert Johnson, sometime between October 25 and October 30, 1979. Mutual requested additional information with respect to Russell's allegations of psychosomatic illness.

Prior to and during this appeal process Russell's husband, Ronald, who worked for a different employer, was also disabled and without salary. Russell contends that, because of the financial duress, she and her husband were forced to cash out his retirement savings plan. The economic loss of lifetime benefits from the retirement plan,

**5.** We note that Russell has claimed, and Mutual does not deny, that Mutual is a fiduciary under ERISA and thus subject to the fiduciary duties and responsibilities imposed by the Act. Under 29 U.S.C. § 1002(21)(A) (1976), *a person is a* fiduciary to the extent that "(i) he exercises *any* discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan...." (Emphasis added).

Russell argues, is a result of Mutual's wrongful denial of her disability claim.

On November 27, 1979, Russell produced the additional information regarding her appeal, including a report from Russell's psychiatrist, Dr. Ziferstein, who had determined that Russell's back pains were caused by psychological problems. Johnson submitted this new evidence to the Committee for review. The committee then scheduled another independent medical examination of Russell, this time with Dr. Faerstein, a psychiatrist. Faerstein also concluded that Russell was temporarily disabled because of a psychiatric illness.

Based on this additional information, Russell's employment status and salary continuance benefits were reinstated as of March 11, 1980. Russell has since been paid all salary continuance benefits due and is presently receiving long-term disability benefits under Mutual's disability plan. Russell filed this action to recover damages she claims to have suffered as a direct result of Mutual's alleged untimely and improper handling of her disability claim and its alleged wrongful termination of her employment.

## I. ERISA PREEMPTION OF STATE LAW CLAIMS

Recognizing the increasing growth, scope and complexity of private employee benefit plans throughout the United States and the inadequacy of the existing standards governing these plans, Congress determined that it was necessary to enact a comprehensive legislative scheme to remedy the problems and afford security, stability, and uniformity in the area. 29 U.S.C. § 1001(a). To provide for the financial soundness and the fair and equitable administration of such plans, ERISA was enacted in 1974. 29 U.S.C. § 1001(a) (1982).

Our inquiry here is whether Russell's state law causes of action based on Mutual's processing of her disability claim under an ERISA regulated benefit plan are preempted and, if so, whether ERISA provides Russell with an actionable claim against Mutual, as a fiduciary.

The broad statutory language offers considerable guidance as to the preemptive scope of ERISA. Section 1144 provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan* . . . ." 29 U.S.C. § 1144(a) (1982) (emphasis added).[6] The legislative history of ERISA indicates that the Act was intended as a comprehensive regulatory scheme, with the broad preemptive language of section 1144 intentionally designed to provide complete protection to plan funds and participants by establishing national uniformity in the regulation of employee benefit plans. In short, "[t]he emergence of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans required . . . the displacement of State action in the field of private employee benefit programs." 120 Cong. Rec. 29,942 (1974) (Statement of Senator Javits). *See also* 120 Cong.Rec. 29,933 (1974) (statement of Senator Williams).

Noting the breadth of federal preemption permitted by ERISA, the Supreme Court recently held that a state law "relates to" an employment benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.,* —— U.S. ——, ——, 103 S.Ct. 2890, 2900 (1983). Since the state laws here involved authorize state causes of action for the improper handling of claims under benefit plans, there is a direct connection between the state laws and the employment benefit plan. *See also Alessi v. Raybestos-Manhattan, Inc.,* 451

---

**6.** ERISA sets forth several specific exceptions to the broad preemptive scope of section 1144(a). Section 1144(b)(2)(A) provides that ERISA does not exempt or relieve "any person from any law of any State which regulates insurance, banking, or securities." ERISA also preserves state regulation of "generally applicable criminal laws of a State." Section 1144(b)(4). Finally, ERISA does not supersede state regulation in other areas, (e.g. antidiscrimination laws) where the state law is coextensive with federal law, *see Shaw v. Delta Airlines,* —— U.S. ——, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (state employment laws which provide a means to enforce Title VII are not preempted).

U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). We therefore hold that Russell's state causes of action relating to her disability claim are preempted.

## II. ERISA CAUSE OF ACTION

ERISA, though preempting Russell's state causes of action, provides a federal cause of action for the breach of certain fiduciary duties by those administering benefit plans. The question, then, is whether Mutual's alleged mishandling of Russell's claim for disability benefits would constitute a breach of fiduciary duty under the Act and, if so, whether it is the type of breach that gives rise to a cause of action by a plan beneficiary.

■ Section 1132 is the civil enforcement portion of ERISA. Section 1132 provides in relevant part that:

(a) A civil action may be brought—

. . . .

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under § 409 [29 U.S.C. § 1109];

Section 1109(a) provides in part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title ... shall be subject to such other equitable or remedial relief as the court may deem appropriate....

Thus a beneficiary or participant may, pursuant to section 1132(a)(2), bring a cause of action under section 1109(a) for the breach by a fiduciary of any responsibility, duty or obligation imposed by the Act, assuming, of course, that the breach causes him some injury.

ERISA is a remedial statute enacted "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions and ready access to the Federal courts." 29 U.S.C. § 1001(b). The Act imposes a comprehensive scheme of fiduciary duties and responsibilities for managing and administering plan funds that "provid[e] benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(A)(i). Protection from fiduciary conduct that violates these duties is necessary to implement Congress' express policy of imposing "strict fiduciary obligations upon those who exercise management or control over the assets or *administration* of an employee pension or welfare plan," 3 U.S.Code Cong. & Ad.News at 5177–78 (1974) (emphasis added), and "providing for appropriate remedies and sanctions" for the breach of such duties. 29 U.S.C. § 1001(b).

■ In light of this explicit congressional policy, we find that ERISA regulates fiduciary conduct not only in the care and management of plan assets, but also in the handling and disposition of claims. It would be unreasonable to conclude that Congress provided a comprehensive fiduciary scheme designed to "occupy the field" with respect to protecting the interests of participants and their beneficiaries under pension and benefit plans without also providing for the fair and proper handling of claims. Moreover, ERISA was intended to serve as a substitute for various existing state protective laws and regulations. *See supra* at 5889, at 487. It would be anomalous if Congress eliminated the protections offered by state law without providing comparable federal protections. We therefore believe that Congress intended to provide a comprehensive scheme of fiduciary responsibilities and duties encompassing both the management of plan assets and the handling and processing of participant's claims and to afford remedies for violation of those responsibilities, obligations and duties.

■ Under the standard of conduct required by ERISA, a fiduciary must process claims in good faith, and in a fair and diligent manner. A failure to render a decision on a benefit claim "promptly" and within the time periods prescribed by the Secretary of Labor constitutes a breach of duty. *See* 29 U.S.C. § 1135, 29 C.F.R. § 2560.503–1(h).

ERISA sets forth rules governing the handling of claims that must be followed by the fiduciaries of each covered plan. The plan must, in accordance with regulations to be adopted by the Secretary of Labor,

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

Pursuant to section 1135, the Secretary has issued implementing regulations imposing strict obligations on those responsible for the handling of benefit claims. 29 C.F.R. § 2560.503–1(h) requires that a decision be made "promptly," *and* not later than 60 days or, under special circumstances, up to 120 days from "receipt of a request for review." A violation of this obligation would, in our opinion, give rise to a section 1109(a) cause of action by a beneficiary or participant, pursuant to the provisions of section 1132(a)(2).

The record shows that the plan administrator received Russell's "request" for review around October 25, 1979 and acknowledged receipt in a letter to Russell dated October 30. Russell's claim was not resolved until March 11, 1980, at least 132 days after the acknowledged receipt of the request for review. Even assuming that "special circumstances" existed, this exceeds the 120 day limit.

Mutual argues that the time period started when Russell submitted all of the medical information requested by the plan administrator. However, the time period under the provision runs from the time of "receipt of a request for review," not the time when all information requested has been forwarded. Otherwise the administrator could always extend the statutory deadline by requesting additional information. Moreover, Mutual has not alleged that Russell failed to act reasonably or diligently in forwarding information to the plan administrator.

■ We do not know whether there are other arguments that Mutual can make in an attempt to show that it did not violate the timeliness requirement, and we need not make a final determination. On remand, the district court should consider the preceding analysis in deciding whether Mutual handled Russell's claim in a timely manner. Moreover, adherence to the specific time requirements is not the only obligation imposed by ERISA in connection with the handling of benefit claims. We also hold that processing claims in a perfunctory or arbitrary manner or in bad faith, or without the exercise of reasonable care, constitutes a breach of fiduciary duty under ERISA, and that such breaches, like a timeliness breach, give rise to a cause of action under the statute.[7] On remand, the district court should further consider here the extent to which Mutual knew or should have known pertinent facts concerning Russell's medical history and whether Mutual should have considered any of those facts before denying her benefit claim; nor need we consider whether Mutual failed in any other way to process Russell's claims in a manner consistent with its statutory obligations.

## III. COMPENSATORY DAMAGES

■ The district court determined that ERISA precluded extracontractual damages

---

**7.** Although some parts of the standard are identical to those used in breach of the duty of fair representation cases, (*Vaca v. Sipes,* 386 U.S. 171, 192, 87 S.Ct. 903, 918, 17 L.Ed.2d 842 (1967); *Robesky v. Qantas Empire Airways Ltd.,* 573 F.2d 1082, 1089–90 (9th Cir.1978)), we do not suggest that the standard in its entirety should be the same. There are significant differences between the role of a union official who is attempting to decide whether an individual's grievance should be taken to arbitration under a collective bargaining agreement, or who may even be attempting to handle a complex arbitration proceeding himself, and the role of a fiduciary who is required to provide benefits under a pension or disability plan. Accordingly, we believe ERISA may require a stricter standard.

for breach of fiduciary duty under the Act. We disagree. In our view, ERISA allows beneficiaries to sue for compensatory damages proximately caused by a breach of fiduciary duty. Such damages are not limited to the amount of any benefit loss.

 We have held, *supra* at p. 488, that under section 1132(a)(2) a participant or beneficiary may institute a section 1109(a) action as the result of a fiduciary's breach of a responsibility, duty or obligation imposed by the statute. Section 1109 provides that a court may award any "equitable or remedial relief as [it] may deem appropriate" against a fiduciary who breaches its duties.[8] The damage provision is extremely broad, and the court is given wide discretion as to the damages to be awarded. It may award any equitable or *remedial* relief it deems appropriate.

 We believe it clear that ERISA permits an award of compensatory damages that will remedy the wrong and make the aggrieved individual whole. Such a reading has found nearly unanimous support in recent decisions which hold that section 1109 provides courts with substantial discretion to fashion appropriate relief, including compensatory damages. *Jiminez v. Pioneer Diecasters,* 549 F.Supp. 677, 681 (C.D.Cal. 1982); *Free v. Gilbert Hodgman, Inc.,* 3 Emp.Ben.Cas. (BNA) 1010, 1012 (N.D. Ill.1982); *Bobo v. 1950 Pension Plan,* 548 F.Supp. 623, 626 (W.D.N.Y.1982); *Eaton v. D'Amato,* 3 Emp.Ben.Cas. (BNA) at 1007 *Pension Plan and Trust,* 317 Pension Rep. (BNA) A–13, A–17 (C.D.Cal.1980); *Bittner v. Sandoff and Rudoy Industries,* 490 F. Supp. 534, 536 (E.D.Wis.1980). Support for the allowance of compensatory damages is also found in the legislative history of ERISA. *See* H.R.Rep. No. 93–533, 93d Cong., 1st Sess. 17, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4655; S.Rep. No. 93–127, 93d Cong., 1st Sess. 35, *reprinted in* 1974 U.S.Cong. & Ad.News 4838, 4871.

In referring to compensatory damages necessary to make a party whole, we are not referring merely to contractual damages for loss of plan benefits. Rather, section 1109 provides for relief that will compensate the injured party for all losses and injuries sustained as a direct and proximate cause of the breach of the fiduciary duty. A contrary reading would conflict with the language of the statute and provide little encouragement to fiduciaries to abide by the Act, since the most that could be forfeited in the event of misconduct would be benefits already owed by the plan. More important, a fiduciary could ignore or unreasonably perform its duties and responsibilities with respect to the disposition of claims with virtual impunity and at the sole cost of the participant who has suffered harm as a result of such misconduct. We believe that Congress did not intend to afford such fiduciary immunity. Rather, by giving courts broad discretion to grant relief, Congress intended to provide adequate redress to participants who are injured as a result of a fiduciary's breach of its obligations.

 Although we find it unnecessary to fashion a more specific rule on compensatory damages, we add that damages for mental or emotional distress accompanied by some physical manifestation are recoverable under section 1109. Here, Russell contends that her pre-existing back problem, which had been originally caused by psychosomatic illness, was aggravated as a result of the emotional distress caused by the improper and untimely handling of her benefit claim. Thus, we need not consider whether the absence of a physical effect would in any way affect our conclusion. We also hold, however, that ERISA does not give rise to a separate cause of action for negligent or intentional infliction of emotional distress. There is no mention in the statute or the legislative history of any such cause of action, and we do not believe that Congress intended to provide one.

## IV. PUNITIVE DAMAGES

 The district court also decided that ERISA does not authorize the award of

---

8. Liability under § 1109 is against the fiduciary personally, not the plan. However, we note that ERISA does allow for certain forms of fiduciary indemnification under section 1110.

punitive damages for the breach of fiduciary duty under the Act. We reverse and hold that it does, under appropriate circumstances. We note that the question whether punitive damages are authorized by ERISA has provoked much controversy and a split in the published decisions. *Compare Jiminez v. Pioneer Diecasters,* 549 F.Supp. at 680 (punitive damages allowed against fiduciary under section 1109); *Free v. Gilbert Hodgman, Inc.,* 3 Emp.Ben.Cas. (BNA) at 1010, 1012 (punitive damages recoverable against fiduciaries under section 1109); *Short v. Junior Steel Co. Employees Pension Plan and Trust,* 317 Pension Rep. (BNA) at A–17 (punitive damages recoverable against fiduciary under section 1109; *Eaton v. D'Amato* 3 Emp.Ben.Cas. (BNA) 1003, 1007 (punitive damages recoverable against fiduciary under section 1109(a)); *Bittner v. Sadoff & Rudoy Industries,* 490 F.Supp. at 536 (punitive damages not excluded under section 1140 and 1132) *with Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1216 (8th Cir.1981), *cert. denied,* 454 U.S. 968 and 1084, 102 S.Ct. 512 and 641, 70 L.Ed.2d 384 and 619 (punitive damages not provided for in ERISA (dictum)); *Hoskins v. Retirement Plan of Standard Oil,* 78–C3670 (N.D.Ill.1962) (punitive damages not recoverable against fiduciary under section 1132 (a)(3)(B)); *Hurn v. Retirement Fund Trust,* 424 F.Supp. 80, 82 (C.D.Cal.1976) (section 1132 does not authorize punitive damages; *Bell v. Southern Oregon Log Scaling and Grading Bureau,* 130 Pension Rep. (BNA) D–6 (D.Or.1976) (punitive damages not recoverable against fiduciary under section 1132(a)(3)(B)); *Wardle v. Southeast and Southwest Areas Pension Fund,* No. 77–144–C, 239 Pension Rep. (BNA) D012 (S.D. Ind.1979) (punitive damages not recoverable under section 1132(a)(3)(B)).

The primary role of punitive damages is not to compensate the victim of intentional wrongdoing, but to punish the wrongdoer and deter others from similar misconduct. Nevertheless, much of what we said earlier in our discussion of compensatory damages is applicable as well to the question whether the Act permits an award of punitive damages, particularly our comments concerning the broad discretion given to the courts under section 1109(a) to fashion appropriate relief.

One of the methods that Congress selected to ensure compliance with the Act was to provide for the imposition of "sanctions" against those violating their fiduciary duties. 29 U.S.C. § 1001(b). Moreover, according to both the Senate and House Committee reports, Congress intended the Act to provide "the full range of legal and equitable remedies available in both state and federal courts." H.R.Rep. No. 93–533, 93d Cong., 1st Sess. 17, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4655, Sen. Rep. No. 93–127, 93d Cong., 1st Sess. 35, *reprinted in* 1974 U.S.Code Cong. & Ad. News 4838, 4871. We see no reason for believing that Congress intended to exclude the sanction of punitive damages from this full range of legal and equitable relief. Furthermore, those same two reports tell us that the Act's "enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with *broad remedies for* redressing or *preventing violations* of the Act." H.R. Rep. No. 93–533, 93d Cong., 1st Sess. 17, *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4655, Sen.Rep. No. 127, 93d Cong., 1st Sess. 35, *reprinted in* 1974 U.S. Code Cong. & Ad.News 4838, 4871 (emphasis added). The availability of punitive damages serves a deterrent or preventative purpose. Violations are less likely to occur if those handling the funds know that they may be subject to heavy financial penalties when their conduct warrants it.

We also reach our conclusion, in part, because of the analysis we applied in resolving an identical question with respect to an analogous statute, the Landrum-Griffin Act, 29 U.S.C. § 412 (1976). We held that the Landrum-Griffin Act authorizes the award of punitive damages in appropriate circumstances because such awards "would serve [as] 'a deterrent to those abuses which Congress sought to prevent.'" *Cooke v. Orange Belt District Council of Painters,* 529 F.2d 815, 820 (9th Cir.1976) (citation omitted). Landrum-Griffin like ERISA does not specifically mention punitive dam-

ages. In the case of Landrum-Griffin we held that the statute authorizes the award of punitive damages even though "the legislative history of the Landrum-Griffin Act is not all that clear (and is probably inconclusive)." *Bise v. International Brotherhood of Electrical Workers,* 618 F.2d 1299, 1305 n. 6 (9th Cir.1979), *cert. denied,* 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980). We found such damages to be authorized because "it may be said that the overall thrust of the Act was to protect the individual rights of union members and to deter abuse and denial thereof by union officers. The awarding of punitive damages will, in proper cases, serve this purpose." *Id.* at 1305 n. 6. We think that the reasoning of *Cooke* and *Bise* is equally applicable here.

■ Although we hold that punitive damages may be awarded for a breach of duty by a plan fiduciary, such awards may be made in only very limited circumstances. These circumstances require a showing that the fiduciary, in carrying out its duties and responsibilities under the Act, acted with actual malice or wanton indifference to the rights of a participant or beneficiary. *See, e.g., Bise,* 618 F.2d at 1305. We intimate no view here as to Russell's right to recover punitive damages based on any specific allegations in her complaint in its present form, or as it may be amended.

## V. EMPLOYMENT CONTRACT

Russell contends that she was wrongfully terminated by Mutual because an implied contract existed between the parties, and Mutual violated its duty of good faith and

fair dealing by firing Russell without good cause.[9] The district court found that no implied employment contract existed and that there was no lack of good faith and fair dealing. Thus, it granted Mutual's motion for summary judgment. We find that summary judgment as to these issues was inappropriate.

Section 2922 of the California Labor Code provides, in pertinent part, that "employment, having no specified term, may be terminated at the will of either party on notice to the other." Russell concedes that no express or written employment contract existed here. She argues instead that an implied contract existed and thus that Mutual could not discharge her except for good or just cause. In *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981), the California court of appeals held that although no written contract existed, the plaintiff had established a prima facie case of wrongful discharge based on an implied contract of employment. The employer was thus required to show "good cause" for the termination of the plaintiff's employment. In making its determination, the court reviewed the totality of the parties' relationship, including "the duration of [plaintiff's] employment, the commendations and promotions he received, the apparent lack of any direct criticism of his work, the assurances he was given, and the employer's acknowledged policies." *Id.* at 329, 171 Cal.Rptr. 917.[10]

The allegations and affidavit. submitted by Russell contend that she was employed by Mutual for 15 years as a claims examin-

---

**9.** We have pendent jurisdiction over Russell's common law claims for wrongful discharge, breach of implied covenant of good faith and fair dealing and damages. With respect to these claims, Mutual and Russell's immediate supervisor, Stevenson, were named as defendants. However, Russell alleges Stevenson was working within the scope of her employment with Mutual. Hence, for purposes of this appeal we will refer to the collective defendants as "Mutual."

**10.** In *Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980) the court, focusing on the 18 years of satisfactory employment performed by the plaintiff, stated

that termination "of employment without legal cause after such a period of time offends the implied in law covenant of good faith and fair dealing contained in all contracts, including employment contracts." *Id.* at 455, 168 Cal. Rptr. 722. Though the court in *Pugh* did not rest its finding on an implied covenant of good faith and fair dealing, it did consider the duration of satisfactory employment as a factor in determining whether an "employer's conduct gave rise to an implied promise that it would not act arbitrarily" in dealing with its employee. *Pugh v. See's Candies* at 329, 171 Cal.Rptr. 917.

er. Russell had allegedly been one of the top producers in the office for the last eight years, and top in sales from 1973–1977. Moreover, she claims that she was commended for her work on several occasions and received no written or formal criticism during the entire course of her employment with Mutual.

The record before us suggests that Mutual's decision to fire Russell was based on Russell's alleged refusal to relocate. However, there is conflicting evidence as to whether Russell ever actually *refused* to relocate or even gave Mutual such an impression.

▮ Where there is any issue of material fact to be tried, summary judgment must be denied. *Hepp v. Lockheed-California Co.,* 86 Cal.App.3d 714, 717, 150 Cal.Rptr. 408 (1978). Under *Pugh,* an implied promise that Mutual would not act arbitrarily with its long-time employee may be "shown by the acts and conduct of the parties, interpreted in light of the subject matter and of the surrounding circumstances." *Pugh v. See's Candies,* 116 Cal.App.3d at 329, 171 Cal.Rptr. 917. Viewing the evidence in a light most favorable to Russell, we find that a material question of fact exists as to whether there was such an implied promise from Mutual to Russell, and, if so, whether there was good cause for the latter's termination. It is for the trier of fact to make these determinations. Hence, summary judgment was inappropriate.

## VI. CALIFORNIA WORKER'S COMPENSATION LAWS

Russell alleges causes of action for negligent and intentional infliction of emotional distress arising both from Mutual's handling of her claim for disability benefits and from the termination of her employment. The district court found that the claims were preempted—those relating to disability benefits by ERISA and those relating to termination by the California Workers' Compensation Law, Cal.Lab.Code §§ 3600–01 (West 1983).

▮ As to Russell's claims for negligent and intentional infliction of emotional distress arising from the handling of her disability benefits, we affirm. Those claims are preempted by ERISA and there is no parallel federal cause of action under the statute.

▮ The district court correctly held that Russell's claims for negligent infliction of emotional distress arising from the termination of her employment are barred by the California Workers' Compensation Laws. We disagree, however, with the district court's holding that Russell's claims for intentional infliction of emotional distress are similarly barred.

Russell maintains that the claim for intentional infliction of emotional distress arising out of the termination of her employment is not preempted by the Workers' Compensation laws because the injuries alleged—emotional anguish, anger, humiliation and feelings of betrayal—did not arise out of the course and scope of employment, are non-physical and thus non-compensable under the Act, and are the result of Mutual's intentional tortious acts.

For purposes of workers' compensation preemption, we must first determine whether the injuries alleged arose out of and in the course of Russell's employment relationship with Mutual. *See generally Renteria v. County of Orange,* 82 Cal. App.3d 833, 835, 147 Cal.Rptr. 447 (1978). California's courts have held that an injury in the form of emotional distress caused by termination of employment is within the course and scope of an employment relationship even when the emotional distress occurs subsequent to the date of termination. *Ankeny v. Lockheed Missiles and Space Co.,* 88 Cal.App.3d 531, 534, 151 Cal. Rptr. 828 (1979); *Gates v. Trans Video Corp.,* 93 Cal.App.3d 196, 201–03, 155 Cal. Rptr. 486 (1979). We thus find that Russell's alleged injuries arose out of and in the course of her employment relationship with Mutual.

▮ However, finding that the activity was within the scope of the employment

relationship for purposes of the Workers' Compensation statute does not end our inquiry. For, as Russell correctly points out, mental anguish absent any physical injury is not a compensable injury under California's Workmen's Compensation laws. Thus, she argues, because Workers' Compensation does not provide a remedy for such an injury, she is not precluded from bringing an action for damages. Here, however, Russell claims a physical injury, aggravation of her pre-existing back condition. Therefore, this argument is of no assistance to her. Finally, Russell says, under California law injured persons are afforded the right to institute civil actions for intentional infliction of emotional distress, regardless of whether they are also entitled to proceed under the Workers' Compensation statute. We decide only that she is correct in at least one part of her argument—under California law, tort actions lie for intentional infliction of emotional distress, and such actions are not preempted by the Workers' Compensation statute.

In *Renteria v. County of Orange,* 82 Cal. App.3d 833, 147 Cal.Rptr. 447 (1978) an employee filed an action for intentional and negligent infliction of emotional distress, claiming that he had been tormented and harassed by his employer and fellow employees. The trial court sustained the defendant's demurrer on the ground that the Workers' Compensation Board had exclusive jurisdiction over the matter. The court of appeal reversed, holding that "an employee's cause of action for intentional infliction of emotional distress constitutes an implied exception to the exclusive remedy provisions of Labor Code section 3601." *Id.* at 842, 147 Cal.Rptr. 447. In reaching its holding, the court of appeals emphasized the fact that the deterrent function of the law would not be properly served by limiting recovery to an award under the essen-

tially "no fault" Workers' Compensation system. The court suggested that imposing civil liability for intentional wrongdoing furthers the objective of deterring such acts.

In *Gates v. Trans Video Corp.,* 93 Cal. App.3d 196, 201–203, 155 Cal.Rptr. 486 (1979) and in *Ankeny v. Lockheed Missiles & Space Company,* 88 Cal.App.3d 531, 534– 36, 151 Cal.Rptr. 828 (1979), two cases relied on by Mutual, the California Courts of Appeals held that Workers' Compensation is the exclusive remedy when a plaintiff's injury involves both emotional and physical components, thereby narrowly construing *Renteria* as applicable only to injuries of an exclusively emotional nature that result in no physical manifestations.

Here, Russell alleges not only emotional stress but physical injury in the form of aggravated back problems.[11] Thus, if *Gates* and *Ankeny* accurately reflect the law of California as the state Supreme Court would apply it, Russell's claim for damages for emotional distress would be preempted by the Workers' Compensation statute. We do not believe, however, that the *Gates-Ankeny* reading of *Renteria* is correct, or that it would be adopted by the California Supreme Court.

Two later state appeals court decisions have substantially undermined the *Gates-Ankeny* reading of *Renteria.* In *Lagies v. Copley,* 110 Cal.App.3d 958, 168 Cal.Rptr. 368 (1980), the court of appeals refused to confine *Renteria's* application to cases involving only emotional injury. Instead, taking its lead from pronouncements by the California Supreme Court, it rejected the artificial distinction between physical and psychological injury, citing *Molien v. Kaiser Foundation Hospital,* 27 Cal.3d 916, 616 P.2d 813, 167 Cal.Rptr. 831 (1980). It held

---

**11.** Pre-existing physical conditions, such as Russell's psychosomatic disability and accompanying back pains, which are aggravated by activities within the course of employment have been held to be compensable under California's Workers' Compensation statute. The California Supreme Court held that "[a] disability that is in part attributable to a pre-existing disease is nonetheless compensable so long as a worker's employment played *any* contributing role in either *aggravating* the progressive [condition] or in hastening [its] occurrence." *City & County of San Francisco v. Workers' Compensation App. Bd.,* 22 Cal.3d 103, 115, 583 P.2d 151, 148 Cal.Rptr. 626 (1978). (Emphasis added).

*Renteria* applicable, even though the plaintiff alleged "accompanying physical disability," 110 Cal.App.3d at 971, 168 Cal.Rptr. 368.

In *McGee v. McNally,* 119 Cal.App.3d 895, 174 Cal.Rptr. 253, (1981), another court of appeals, in a decision joined by Justice Grodin, now of the California Supreme Court, also minimized the *Ankeny-Gates* distinction between emotional injury and emotional injury accompanied by physical effects. The court of appeals in *McGee* restated the *Renteria* holding, verbatim, and adopted the essential reasoning underlying the holding.

Although there is language in *Renteria* and *McGee,* such as the reference to "make-weight" injuries, that makes the analysis somewhat less than crystal clear, we think it evident that the *Renteria-McGee* courts were saying in essence that where the primary injury is emotional distress, and that is the gist of the complaint, a cause of action in intentional tort lies, regardless of whether the emotional distress also manifests itself physically in some way or causes some physical disability.

Of equal importance, the court of appeals in *McGee* echoed the policy concern voiced in *Renteria,* that emotional injuries resulting from deliberate wrongdoing must be actionable at civil law—outside the confines of Workers' Compensation—if the deterrent function of the law is to be served. *McGee* pointed to the California Supreme Court's discussion in *Johns-Manville Products Corp. v. Superior Court,* 27 Cal.3d 465, 612 P.2d 948, 165 Cal.Rptr. 858 (1980), of "a trend toward allowing an action at law for injuries suffered in the employment if the employer acts deliberately for the purpose of injuring the employee. . . ." *McGee,* 119 Cal.App.3d at 895, 174 Cal.Rptr. 253. *McGee* also stressed the fact that both the

majority and dissenting opinions in *Johns-Manville* expressed approval of *Renteria.*

In an effort to strengthen the deterrent function of liability rules, the trend towards increasing the sanctions imposed on wrongdoers is gaining favor in a variety of contexts as courts recognize that compensation of victims is only part of the purpose of tort liability. *See, e.g., Hartford Accident & Indemnity Co. v. Village of Hempstead,* 48 N.Y.2d 218, 228, 397 N.E.2d 737, 744, 422 N.Y.S.2d 47, 53–54 (1979), (New York public policy prohibits insurance coverage of punitive damages awarded against municipal officers under 42 U.S.C. § 1983 to foster deterrent objective). *See generally,* G. Calabresi, *The Cost of Accidents* 39–40 (1970); Stone, *The Place of Enterprise Liability in the Control of Corporate Conduct,* 90 Yale L.J. 1 (1980).

It is significant that *McGee,* which substantially undermines the reasoning of *Ankeny* and *Gates,* was decided by the same district court of appeals that decided *Ankeny.* Thus, in only one of California's five appellate districts is there currently a controlling decision that purports to limit the *Renteria* holding. We believe that *Renteria* reflects the law as the California Supreme Court would find it; we restate its holding verbatim, and adopt it here: "An employee's cause of action for intentional infliction of emotional distress constitutes an implied exception to the exclusive remedy provision of Labor Code Section 3601." *Renteria,* 147 Cal.Rptr. at 452. We therefore hold that California's Workers' Compensation laws do not constitute Russell's exclusive remedy for the alleged intentional infliction of emotional distress by her employer.[12]

Affirmed in part; reversed in part; remanded for further proceedings consistent with this opinion. Upon remand, plaintiff should be allowed to amend her complaint

12. Ordinarily we would give some deference to the district court's judgment as to how the California Supreme Court would interpret the California statute. *See, e.g., Major v. Arizona State Prison,* 642 F.2d 311, 313 (9th Cir.1981); *United States v. County of Humboldt,* 628 F.2d 549, 551 (9th Cir.1980). Here, however, we give the district court's conclusions little, if any, weight. The district court cited no cases, California or otherwise, to support its conclusions. Nor did the district court prepare those conclusions itself, a practice we have previously expressed our disapproval of.

to plead such causes of action as may be appropriate in light of this opinion.