**Ann EVERSOLE, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE CO., INC., Defendant.**

**No. CV 80–3269 MRP.**

United States District Court,
C. D. California.

Sept. 15, 1980.

---

Douglas L. Hallett, Adams, Duque & Hazeltine, Los Angeles, Cal., for plaintiff.

Harvey R. Levine, Shernoff & Levine, San Diego, Cal., for defendant.

## OPINION

PFAELZER, District Judge.

On June 11, 1980, plaintiff Ann Eversole filed this civil action in the Superior Court of the State of California for the County of Los Angeles. The named defendants are Metropolitan Life Insurance Company ("Metropolitan") which issued a group insurance policy covering plaintiff to her employer, Litton Industries, Inc. and the Metropolitan employee who apparently was responsible for the denial of plaintiff's claim for medical benefits. The complaint seeks compensatory and punitive damages based on four causes of action under state law: 1) Breach of the Duty of Good Faith and Fair Dealing; 2) Common Law Fraud; 3) Breach of Fiduciary Duties; and 4) Breach of Statutory Duties under California Insurance Code § 790.03 (unfair insurance practices). The gravamen of the complaint is defendants' alleged bad faith denial of plaintiff's claim for medical benefits due under the insurance policy.

On July 25, 1980, defendants removed the action to this Court pursuant to 28 U.S.C.

§ 1441(a), (b). They contend that Metropolitan's group insurance policy is an "employee benefit plan" ("EBP" or "plan") governed exclusively by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1381 (1976). Federal district courts have original concurrent jurisdiction over actions to recover benefits due under an employee benefit plan and exclusive jurisdiction over all other private ERISA actions. 29 U.S.C. § 1132(e)(1).

Following removal of the action to this Court, defendants filed a Motion to Dismiss for Failure to State a Claim, or in the Alternative, for a More Definite Statement. The ground for their motion is that ERISA not only governs any action against the plan, but it also totally preempts plaintiff's state law claims, thereby requiring their dismissal. Further, defendants contend that plaintiff's failure to properly state a claim under ERISA requires either dismissal or a more definite statement.

Plaintiff's position is that ERISA does not govern group insurance policies issued to or purchased by employee benefit plans because ERISA exempts state laws regulating insurance from preemption. 29 U.S.C. § 1144(b)(2)(A). Therefore, plaintiff's state law claims against the insurance company are valid, and the action should be remanded to the state courts.

In light of the widespread usage of group insurance policies by employers, the question of ERISA preemption carries far–reaching implications for the substantive rights of countless policyholders, the duties of the insurers under those policies, and the caseload of the federal courts. Unfortunately, neither the sections of ERISA defin-

ing its coverage, 29 U.S.C. §§ 1002–03, and providing for preemption of state law, *id.* § 1144, the prior case law [1], nor the scholarly commentary [2] provide a clear answer to the problems raised here: 1) Does ERISA apply to the relationship between an insurance company and the insured when the insurance policy is issued to an employee benefit plan? 2) If it does apply, to what extent does ERISA preempt the policyholder's state law claims against the insurance company?

### I. ERISA coverage

■ The initial approach to the question of ERISA coverage must be by analysis of the statute itself. The relevant subchapter of ERISA applies to "any employee benefit plan" established or maintained by an employer or employee organization. 29 U.S.C. § 1003(a). The term "employee benefit plan" includes "employee welfare benefit plan," *id.* § 1002(3), which is defined as follows:

The terms "employee welfare benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance* or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training

---

1. See, e.g., Hewlett–Packard Co. v. Barnes, 571 F.2d 502 (9th Cir. 1978), cert. denied, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); Wayne Chemical, Inc. v. Columbus Agency Service Corp., 567 F.2d 692 (7th Cir. 1977); Wadsworth v. Whaland, 562 F.2d 70 (1st Cir. 1977), cert. denied, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); St. Paul Electrical Workers Welfare Fund v. Markman, 490 F.Supp. 931 (D.Minn.1980); Cate v. Blue Cross, 434 F.Supp. 1187 (E.D.Tenn.1977).

2. See, e.g., Manno, ERISA Preemption and the McCarran–Ferguson Act: The Need for Con-

gressional Action, 52 Temple L.Q. 51 (1979); Kilberg and Heron, The Preemption of State Law Under ERISA, 1979 Duke L.J. 383; Turza and Halloway, Preemption of State Laws Under The Employment Retirement Income Security Act of 1974, 28 Catholic U.L.Rev. 163 (1979); Comment, ERISA Preemption and Indirect Regulation of Employee Welfare Plans Through State Insurance Laws, 78 Colum.L.Rev. 1536 (1978); Brummond, Federal Preemption of State Insurance Regulation Under ERISA, 62 Iowa L.Rev. 57 (1976).

programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

*Id.* § 1002(1) (emphasis added). In this case, plaintiff's benefit plan was established by her employer for the purpose of providing medical and other benefits through the purchase of insurance. The statute, read carefully, covers the plan in the instant case.[3]

Further support for ERISA coverage may be drawn from ERISA's definition of an ERISA "fiduciary":

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Here, the Summary Plan Description of plaintiff's benefit plan names Metropolitan as fiduciary of the plan, and more importantly, provides that Metropolitan has the authority to grant or deny claims. Accordingly, Metropolitan seems to have the requisite "discretionary authority" in the administration of the plan to qualify as an ERISA fiduciary. Alternatively, Metropolitan may also be a fiduciary by virtue of its management or control over the primary asset of this plan, the policy itself. *See* 29 U.S.C. § 1101(b)(2) (assets of the plan include insurance policy).

Plaintiff contends that the insurance company is separate from the plan, that it controls only its own assets rather than the assets of the plan, and that a mere contractual relationship with a plan does not transform an insurance company into an ERISA fiduciary. *See Cate v. Blue Cross,* 434 F.Supp. 1187, 1190–91 (E.D.Tenn.1977).

Plaintiff's arguments seem persuasive, especially in light of ERISA's exemption of state insurance laws from preemption, discussed *infra,* but they appear to have been rendered untenable by Department of Labor regulations prescribing the minimum requirements for fair claims procedures in ERISA plans. These regulations provide *inter alia*:

> To the extent that benefits under an employee benefit plan are provided or administered by an insurance company, insurance service, or other similar organization which is subject to regulation under the insurance laws of one or more States, the claims procedure pertaining to such benefits may provide for review of and decision upon denied claims by such company, service or organization. In such case, that company, service, or organization shall be the "appropriate named fiduciary" for purposes of this section.

29 C.F.R. § 2560.503–1(g)(2) (1979). The quoted language is explained by the Department of Labor as follows:

> Where review and final decision on claims is performed by an insurance company, insurance service or similar organization as provided in a plan's claims procedure, the insurance organization is the "named fiduciary." . . .

> Many insurance carriers and associations objected to the position taken in the proposed regulation concerning insurance carriers as named fiduciaries, on the grounds that the employee benefit plan provided by an employer to its employees is not synonymous with the insurance contract entered into by the employer and the insurer as a vehicle to accomplish the payment of benefit claims. A person is a fiduciary by operation of section 3(21)(A)(iii) of the Act if the person exercises discretionary authority or discretionary responsibility in the administration of

---

**3.** *Cf.* 29 C.F.R. § 2510.3–2(j) (exempting insurance arrangements in which the employer is virtually uninvolved, i.e., makes no contributions, etc.).

a plan. If this is the case under the terms of a particular plan regarding final decision on appeals from claim denials, the plan has effectively designated that person a named fiduciary.

42 Fed.Reg. 27426, 27427 (May 27, 1977).

This regulation would seem to be a binding "legislative rule" since it was promulgated under the Labor Department's delegated statutory authority under 29 U.S.C. §§ 1133, 1135 to establish fair claims procedures. *See Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); *Buczynski v. General Motors Corp.*, 616 F.2d 1238, 1242–43 (3d Cir. 1980) (ERISA regulation held binding). But even if the regulation is not absolutely binding, this Court is convinced that it is consistent with the statute and should be followed. *See* 2 Davis, Administrative Law § 7:8 at 36–37 (2d ed. 1979). Finally, it appears without question that this regulation covers the situation in this case, i.e., an employer providing an EBP by means of insurance policies where the insurer exercises discretionary authority over claims denials and is therefore a fiduciary.

On the basis of the foregoing analysis, the Court holds that plaintiff is a participant in an ERISA plan and that Metropolitan is an ERISA fiduciary. Consequently, although she has not done so, plaintiff could have asserted a claim under ERISA for benefits due under the plan, 29 U.S.C. § 1132(a)(1)(B), as well as one for breach of fiduciary duty, *id.* §§ 1132(a)(2), 1109(a).

## II. Preemption of State Law

■ The fact that ERISA may apply to this dispute by imposing fiduciary obligations on defendants and bestowing legal rights on plaintiff does not, however, resolve the difficult question of ERISA's effect on state law claims against the insurance company. Federal regulation of a field of commerce should not be deemed to preempt state regulatory power unless "the nature of the regulated subject matter permits no other conclusion" or "Congress has unmistakably so ordained." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S.

132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). *See also Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). ERISA's enigmatic command regarding preemption is found in 29 U.S.C. § 1144, which provides in pertinent part:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

.        .        .        .        .

(b)(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

(B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

.        .        .        .        .

(c) For purposes of this section:

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

(2) The term "State" includes a State, any political subdivisions thereof, or any

agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

(d) Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

The scope of ERISA's preemption of state law is delineated in these four subsections of § 1144. Subsection (a) provides that all state laws are superseded insofar as they "relate to" employee benefit plans. This sweeping language is restricted by the savings clause, subsection (b)(2)(A), which exempts state laws regulating insurance from preemption. The savings clause is in turn limited by subsection (b)(2)(B), which provides that no employee benefit plan shall be "deemed" to be an insurance company or engaged in the business of insurance for purposes of state law. Finally, subsection (d) prevents ERISA from impairing or superseding any other federal law.

■ The first inquiry is whether plaintiff's claims are based on state laws which "relate to" the employee benefit plan at issue here. "State" is defined in the statute to include legislatures and courts which purport "to regulate, directly or indirectly, the terms and conditions of employee benefit plans," and "State law" is defined to include "laws" and "decisions." Therefore, even conceding that the insurance company is not synonymous with the plan, it must be ·

concluded that statutes and court decisions which indirectly regulate the terms and conditions of the plan as a result of direct regulation of the insurance company "relate to the plan." This conclusion is in accord with the legislative history of ERISA's preemptive provision which demonstrates that Congress rejected a provision preempting only inconsistent or duplicative state laws in favor of preemption of the entire field of EBP regulations.[4] Based on this legislative history, the First Circuit in *Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir. 1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978), held that a state law regulating group insurance policies purchased by EBP's did indirectly relate to the plans and was subject to preemption under § 1144(a). *Id.* at 77–78.

The second inquiry is whether plaintiff's claims are based on "any law of any State which regulates insurance" under § 1144(b)(2)(A)'s savings clause. ERISA's definition of "State law" again includes both statutory and decisional law, *id.* § 1144(c), but neither the statute, its legislative history, nor prior ERISA case law attempts to define what constitutes a law that "regulates insurance." The Supreme Court has, however, defined virtually identical language in the similar context of the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15. That Act provides that "[n]o Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of

4. *See, e.g.,* statements of Senator Jacob Javits, 120 Cong.Rec. 29942 (1974), in which he concluded: "[T]he emergence of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans required-but for certain exceptions-the displacement of State action in the field of private employee benefit programs." *See also* statements of Senator Harrison Williams, Jr., 120 Cong.Rec. 29933 (1974) (preemption of the field intended to apply in its broadest sense with only the exceptions specified in the act); statement of Congressman John Dent, 120 Cong. Rec. 29197 (1974); H.R.Rep. No. 93–533, [1974] U.S.Code Cong. & Admin.News, pp. 4639, 4650.

Of course, there are state claims so peripheral to the goals of ERISA that even though they are not specifically exempted from preemption, common sense bars their preemption. For example, no one would argue that ERISA preempts such tort causes of action as slander, assault or intentional infliction of emotional distress even though these wrongs were committed by an ERISA fiduciary in the course of a dispute over the benefits due under an ERISA plan. The plaintiff's claims in this case, however, are not so peripheral to ERISA's concerns even though some of them may sound in tort.

insurance." *Id.* § 1012(b). McCarran–Ferguson reaffirmed the national policy of state primacy in the regulation of insurance. *See SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). *See generally* Comment, *State Regulation Under the McCarran Act,* 47 Tul.L. Rev. 1069 (1973). According to the First Circuit, the same national policy is twice reaffirmed by § 1144 of ERISA: once in the insurance law savings clause and again in subsection (d), which prevents ERISA from impairing any other federal law. *Wadsworth, supra* at 78.

Thus, ERISA's savings clause and McCarran–Ferguson both serve the same national policy and utilize the same terminology to define that which is left to the states: laws that "regulate insurance" under ERISA and laws "regulating the business of insurance" under McCarran–Ferguson. The two statutes are *in pari materia* and should therefore be construed consistently. *See, e.g., United States v. Conforte,* 457 F.Supp. 641, 654 n.7 (D.Nev.1978), *aff'd,* 624 F.2d 869 (9th Cir. 1980).

In *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), the Supreme Court defined the scope of state laws "regulating the business of insurance" and held that a state law protecting the stockholders of insurance companies was not encompassed by that term:

> The McCarran–Ferguson Act was an attempt to turn back the clock, to assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation.
>
> . . . Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the "business of insurance" does the statute apply . . . . Congress was concerned with the type of state regulation that centers around the contract of insurance, the transaction which *Paul v. Virginia* [, 8 Wall. 168, 19 L.Ed. 357] held was not "commerce." The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and

enforcement–these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was–it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the "business of insurance."

*Id.* at 459–60, 89 S.Ct. at 568. *See also American Family Life Assurance Co. v. Planned Marketing Associates, Inc.,* 389 F.Supp. 1141 (E.D.Va.1974).

■ All of plaintiff's state law claims are based solely on her relationship with the insurer and the interpretation and enforcement of the insurance policy. The fact that most of her claims arise from the common law rather than from a state statute is irrelevant; § 1144(c)(1) includes decisional law in its definition of "State law." The fact that some of her claims (e.g., breach of fiduciary duty) are based on laws of general application in that they are not restricted to insurance companies is likewise not a bar to their being treated as laws regulating insurance. In *SEC v. National Securities,* the Court made it clear that the status of a law as an insurance regulation depended not on its presence in an insurance code, but rather on the interests it seeks to protect:

> It [the Arizona statute] is attempting to regulate not the "insurance" relationship, but the relationship between a stockholder and the company in which he owns stock. This is not insurance regulation, but securities regulation. It is true that the state statute applies only to insurance companies. But mere matters of form need not detain us. The crucial point is that here the State has focused its attention on stockholder protection; it is not attempting to secure the interests of those purchasing insurance policies.

*Id.* at 460, 89 S.Ct. at 568. Since the claims which plaintiff asserts against the insurance company are permitted under state

law for the purpose of securing her interests as a policyholder, they should be treated as insurance regulation and saved from preemption.

This broad reading of the insurance savings clause is further buttressed by the language of the "deemer clause," § 1144(b)(2)(B), the third prong of the § 1144 preemption analysis. That clause creates an exception to the savings clause; it prevents an employee benefit plan from being "deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts ... " The deemer clause bars a state from treating a plan as if it were an insurance company because the drafters must have assumed that if the plan were an insurance company, it would still be subject to state law due to the savings clause. The effect of the deemer clause is to prohibit a state from regulating an employee benefit plan even though the plan serves as a self-insurer on its benefits. *Wadsworth, supra* at 77. Thus, the deemer clause distinguishes between true insurance companies, which are subject to state law, and employee benefit plans, which are exempt from state regulation even though they exhibit some of the same risk–distributing characteristics as traditional insurance.[5]

The distinction between laws regulating an EBP and laws regulating the insurance company from which the plan purchases insurance is fundamental to understanding and reconciling the disparate results reached in prior cases. In *Hewlett–Packard Co. v. Barnes*, 571 F.2d 502 (9th Cir. 1978), *cert. denied*, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978), the parties seeking exemption from a state law regulating health care plans were employer–administrators of self–insured plans. The Ninth Circuit described this as "direct" regulation of EBP's and therefore preempted due to ERISA's deemer clause. 571 F.2d at 504.

The court also cited *Wadsworth* for the proposition that a "state may not *directly* regulate employee benefit plans under general insurance law despite McCarran–Ferguson." *Id.* at 505 (emphasis added). More recently, in *St. Paul Electrical Workers Welfare Fund v. Markman*, 490 F.Supp. 931 (D.Minn.1980), another state health care insurance statute was held preempted because it "directly" regulated certain self–insured benefit plans. *Id.* at 934. But the court was careful to distinguish that situation from one in which "the regulation of pension plans is indirect, *Wadsworth, supra*," or involving "legislation directed solely at insurance companies." *Id.*

In contrast to the latter cases, the plaintiffs in *Wadsworth* sought exemption from state laws regulating the content of group health insurance policies purchased by EBP's. The First Circuit agreed with the *Hewlett–Packard* analysis but distinguished direct regulation of EBP's, which is preempted, from indirect regulation of plans through the regulation of insurance policies purchased by the plans. The latter is not preempted. 562 F.2d at 78. As a textual matter, the court noted that a broader reading of the deemer clause, construing it so as to bar indirect regulation of plans, would have the illogical result of completely emasculating the savings clause. *Id.* Since only insurance laws that relate to EBP's are even subject to preemption under § 1144(a), if indirect regulation of plans is preempted by the deemer clause, what would be left for the savings clause to save? As a policy matter, the court balked at the notion that Congress would, without a clearer statement of intent, nullify all state laws as applied to group policies issued to EBP's, especially in light of McCarran–Ferguson's declaration of state primacy in the regulation of insurance. Other courts have taken similar positions. *See Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 700 (7th Cir. 1977) (Tone, J.)

---

5. *See generally*, Brummond, *supra* note 2, at 68-89. *See also ERISA Preemption and Indirect Regulation, supra* note 2, at 1540 (deemer clause "aimed solely at preventing states from regulating employee welfare plans by calling them insurers and taking advantage of the exemption").

("[T]he ERISA exemption of a plan does not extend to the insurer ... or to an insurance policy purchased by the plan from an insurer"); *Cate v. Blue Cross*, 434 F.Supp. 1187, 1190 (E.D.Tenn.1977) (ERISA intended to "leave to the states the power to regulate insurance companies and insurance contracts" and not to "make every dissatisfied claimant under an employer's group health insurance plan a potential litigant in federal court").

■ The rule that emerges from these cases is that any law directly regulating an employee benefit plan is preempted, but laws regulating an insurance company or policy purchased from an insurance company are saved from preemption. It is therefore the ruling of this court that ERISA does apply to plaintiff's plan, but her state law claims against Metropolitan are not preempted. The Court recognizes the difficulties which are and will be encountered by insurance companies, such as defendant, who are subject to the dual obligations of state and federal law when they assume the responsibilities of an ERISA fiduciary; but the Congressional concern for uniformity of regulations appears to have been limited to the plans and did not extend to the insurers. Thus, the result announced herein is necessary to harmonize the divergent goals of ERISA's preemption provisions: to establish uniform regulation of employment benefit plans while simultaneously maintaining the ascendancy of state regulation of insurance matters. Further clarification is needed, but that must come from the source of the legislation.

III. Removal

■ Defendants removed the action to this Court on the ground that ERISA governs this action and grants the federal courts original jurisdiction over ERISA claims. *See* 29 U.S.C. § 1132(e)(1). As discussed above, plaintiff could have brought suit in federal court and asserted ERISA claims for benefits due and for breach of fiduciary duty. Here plaintiff chose not to assert her ERISA claims but to rely solely on her state law causes of action.

This she was free to do since her state claims were not preempted. As Professor Moore has stated, "where plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal ground and pitch his claim on the state ground." 1A Moore's Federal Practice ¶ 0.160 at 185 (1979). *See, e.g., Sheeran v. General Electric Co.*, 593 F.2d 93, 96 (9th Cir. 1979); *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339, 346 (3d Cir. 1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975); Wright, Law of Federal Courts 153 (3d ed. 1976) (unless claim is exclusively federal, plaintiff is "master of his claim," and if he chooses not to assert available federal claim, defendant cannot remove). Since plaintiff's claims were not preempted by ERISA, the removal was improvident, and this Court lacks subject matter jurisdiction over the action. Accordingly, pursuant to 28 U.S.C. § 1447(c),

IT IS ORDERED that this action be remanded to the Superior Court of the State of California for the County of Los Angeles.