Shirley SHIFFLER, Administratrix of the Estate of John W. Shiffler, Deceased, and Shirley Shiffler, in her own right

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, et al.

No. 84–6344.

United States District Court, E.D. Pennsylvania.

Feb. 6, 1986.

Michael T. McDonnell, Jr., Drexel Hill, Pa., for Shiffler.

William J. Payne, Philadelphia, Pa., Fred D. Furman, for Westinghouse Elec. Corp., Westinghouse Ins. Plan.

Michael R. Lastowski, Philadelphia, Pa., Walter R. Milbourne, for Equitable Life Assur. Soc. of U.S.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff originally filed this action in the Court of Common Pleas of Philadelphia County in November, 1984. Although the suit was denominated an "Action in Declaratory Judgment," plaintiff sought an order directing the defendants to make payment to plaintiff of amounts allegedly due under two insurance policies issued to the deceased, John W. Shiffler, through his employer, Westinghouse Electric Corporation ("Westinghouse"). The Equitable Life Assurance Society of the United States ("Equitable"), an insurance company based in New York, provided coverage for both policies, which were issued pursuant to two employee benefit plans maintained by Westinghouse for its employees: the Westinghouse Insurance Plan (the "Insurance Plan") and the Westinghouse Personal Accident Insurance Plan (the "Accident Plan"). Westinghouse is the plan administrator for both plans. Westinghouse, Equitable, and the two plans are defendants in this action.

In December, 1984, defendants removed the action to this court. In their petition for removal, they stated that this court had original jurisdiction to hear the action pursuant to 28 U.S.C. § 1331 and 29 U.S.C.

§ 1132(e)(1). According to defendants, the purpose of this suit was to recover benefits and enforce rights under employee benefit plans and, thus, was properly labelled an action under the Employee Retirement Income Security Act ("ERISA").

It is not necessary to recapitulate the procedural history of this action, which is adequately summarized in my Memorandum/Order of May 28, 1985. 609 F.Supp. 832 (E.D.Pa.1985). In that memorandum, I observed that I would dispose of plaintiff's second motion to remand once the parties had filed submissions on two questions dealing with the preemption issue raised by this motion:

1) Which of the counts of plaintiff's complaint, if any, assert claims which are preempted by ERISA and replaced by a cause of action under 29 U.S.C. § 1132(a)(1)(B)?

2) If any claims are identified under question 1 as a basis for removal, what would be the basis for this court's jurisdiction (1) over the claims which are not preempted and replaced by ERISA and/or (2) over the parties against whom only state law claims have been stated?

I also noted that defendants would have the burden on this issue.

Having now received the parties' submissions on these questions, I will consider whether removal of this action was proper or whether this case should be remanded to state court.

### A.

*1) Which of the counts of plaintiff's complaint, if any, assert claims which are preempted by ERISA and replaced by a cause of action under 29 U.S.C. § 1132(a)(1)(B)?*

#### 1. Statutory Framework

ERISA comprehensively regulates employee pension and welfare plans. *See Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). An employee welfare-benefit plan or welfare plan is defined as one that provides to employees or their

beneficiaries, "through the purchase of insurance or otherwise," "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. § 1002(1). Plans may self-insure or purchase insurance for their participation. Those that purchase insurance are thus affected by state regulation of the insurance industry. *See Metropolitan Life*, 105 S.Ct. at 2385.

■ Although ERISA imposes upon plans certain requirements relating to participation, funding, and vesting, it does not regulate the substantive content of the plans. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983). Yet the statute does include a provision under which ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The "relate to" language of this provision has been broadly interpreted to cover state laws that directly or indirectly affect ERISA plans. *See Shaw*, 103 S.Ct. at 2899–2901. Moreover, the statute has defined state law to include "any laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). Thus, the term state law includes the common law developed by state courts.

This broad preemption provision, however, is substantially qualified by an insurance "savings clause": "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). This clause is in turn qualified by the so-called "deemer clause," which states that no employee-benefit plan "shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B). These clauses have been interpreted to show Congress's intent to preserve from preemption state laws regulating insurance contracts except for those that apply directly to the benefit plans themselves.

Finally, Section 1132(a) provides for certain civil causes of action intended to promote enforcement of the statutory scheme:

A civil action may be brought

(1) by a participant or beneficiary—

\* \* \* \* \* \*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

29 U.S.C. § 1132(a)(1) & (2). Pursuant to Section 1132(e)(1), state and federal courts have concurrent jurisdiction over complaints brought under Section 1132(a)(1)(B); federal courts have exclusive jurisdiction over other Section 1132(a) complaints.

### 2. Preemption with respect to the Insurance Plan

■ In addressing this court's first question, defendants argue that the three counts brought against the Insurance Plan, which both parties agree is an employee benefit welfare plan under 29 U.S.C. § 1002(1), are preempted by ERISA. Essentially, defendants argue that these counts, although styled as violations of the plan's duties under the insurance contracts, are in reality claims for benefits under the plan and, accordingly, fall under Section 1132(a)(1)(B). Thus, in defendants' view, Section 1132(e)(1) gives this court jurisdiction over these counts.

Plaintiff, however, claims that the counts assert a cause of action based upon the plan's duties under the insurance contracts and not upon ERISA. Specifically, she states that, being a party under the insurance contracts, the Insurance Plan had various contractual duties towards her. Plaintiff realizes that, if the plan is considered to have duties under the insurance contracts and if, therefore, a state law of insurance contracts is to apply to the plan,

then these counts must withstand the preemptive effect of Section 1144(a). That is, plaintiff does not dispute that such insurance law, if applied, clearly "relates to" the plan and thus would seem to be preempted by this provision. According to plaintiff, however, this application of insurance law would be exempt from preemption by reason of the "savings clause" of Section 1144(b)(2)(A), a clause that, in plaintiff's view, has been broadly interpreted by the Supreme Court in its recent opinion in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

It is true that the Court in *Metropolitan Life* gave a broad interpretation to the "savings clause." The facts of that case suggest, however, that it will not likely support plaintiff's position in the instant action. *Metropolitan Life* dealt with a challenge to the enforcement of a Massachusetts statute that regulated the substantive terms of insurance policies purchased by ERISA health-care plans. 105 S.Ct. at 2383. In considering whether this state regulation fell within the "savings clause," the Court rejected the distinction that appellants had tried to draw between "traditional" insurance laws, such as those involving how insurance was sold, and laws regulating the substantive terms of insurance contracts. *Id.* at 2390. The appellants had argued that, whereas the traditional laws would be exempt from preemption by the "savings clause," the substantive laws would not. In rejecting this distinction, the Court decided that laws concerning the substantive terms were precisely the type that would be protected by the "savings clause" because they would "relate to" benefit plans and thus be otherwise subject to the preemption of § 1144(b)(2)(A). *Id.*

Thus, the "broad interpretation" of *Metropolitan Life* was the extension of the "savings clause" exemption to the state regulation of the terms of insurance contracts purchased by ERISA plans. This case said nothing about the applicability of § 1144(b)(2)(A) to the situation, which is the one before me, where plaintiff is attempting to apply a state law of insurance con-

tracts directly to an ERISA plan. Indeed, language in the opinion suggests that such a context is precisely the one in which the "savings clause" will not come into play. As the Court pointed out, the "deemer clause" removes laws that would otherwise be protected by the "savings clause" when "they are applied directly to benefit plans." *Id.*

Plaintiff's argument that cases cited by the Court in *Metropolitan Life* support the proposition that the "savings clause" should exempt this particular dispute from ERISA preemption does not withstand serious analysis. *See* Plaintiff's Memorandum at 6 (citing *Metropolitan Life*, 105 S.Ct. at 2390 n. 18). Most of the cases cited by the Court dealt with situations similar to the one present in *Metropolitan Life* and thus involved state regulation of the substantive terms of insurance policies. *See, e.g., Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692 (7th Cir. 1977); *Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir.1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978).

Moreover, the one citation with a factual situation somewhat analogous to that of the instant case—*Eversole v. Metropolitan Life Insurance Co.*, 500 F.Supp. 1162 (C.D. Ca.1980)—presents reasoning identical with that later adopted by the *Metropolitan Life* Court: that, by operation of the "deemer clause," state insurance claims brought directly against an ERISA plan should be preempted. In *Eversole*, an employee brought state law claims against an insurance company that had issued a group policy to her employer for an ERISA plan, and that had denied her benefits on the policy. Defendants removed the action to federal court and argued that ERISA preempted the assertion of these claims. *Id.* at 1163–64. In remanding the case to state court, the district court concluded that ERISA would not preempt the state common law that regulated the insurance company and its policies. *Id.* at 1170. The court added, however, that laws directly regulating the plans themselves would be preempted. *Id.*

In distinguishing between laws regulating insurance companies and laws regulating ERISA plans, the court in *Eversole* emphasized the role of the "deemer clause" in the statutory scheme of Section 1144. The court noted that this clause prevents a state from "treating a plan as if it were an insurance company." *Id.* at 1169. To assert that a plan, to which an insurance policy is issued, thereby subjects itself to state laws regulating insurance, *see* Plaintiff's Memorandum at 9, moves in the direction of treating plans as insurance companies—a result running counter to the "deemer clause." *See id.; see also Powell v. Chesapeake & Potomac Telephone Co.,* No. 85–1072, slip op. at 8–9 (4th Cir. Dec. 18, 1985); *McLaughlin v. Connecticut General Life Insurance Co.,* 565 F.Supp. 434 (N.D.Ca.1983).

I conclude, therefore, that even if I were to accept plaintiff's description of the three counts against the Insurance Plan as claims for violations of state insurance law, these claims would be preempted by Section 1144(a). Accordingly, I hold that these counts involve claims to recover benefits due her under the terms of the plan and present a cause of action under Section 1132(a)(1)(B). The question then becomes whether this same reasoning applies to the Accident Plan.

### 3. *The Accident Plan*

■ Plaintiff argues that the Accident Plan is not an employee welfare plan under the definition given in ERISA in 29 U.S.C. § 1002(1). Thus, according to plaintiff, ERISA cannot preempt her state insurance claims against this plan. Defendants contend that the Accident Plan is an employee welfare plan within the meaning of the statute and that, for the reasons stated in section 3 above, ERISA preempts any state law claims against this plan.

The statute provides in pertinent part: (1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, *accident,* disability, death or unemployment....

29 U.S.C. § 1002(1) (emphasis added). The statute thus includes, as one of the purposes for which an employee welfare plan is formed, the provision of benefits in the event of an accident—the alleged purpose of the Accident Plan.

The parties disagree, however, over an interpretation of a Department of Labor regulation that identifies which plans do not fall into the Section 1002(1) definition:

(j) *Certain group or group-type insurance programs.* For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deduction or dues checkoffs.

29 C.F.R. § 2510.3–1(j). The regulatory scheme seems to contemplate that if all four sub-parts are met the particular plan will not qualify as an employee welfare benefit plan. Both parties agree that, in the case of the Accident Plan, sub-parts (1), (2), and (4) are met. The dispute centers on sub-part (3), with plaintiff contending that

defendants' activity with respect to the Accident Plan does not constitute endorsement of the plan, and with defendants arguing that it does.

The facts of record before this court suggest that defendants did not simply confine the insurer to publicizing the Accident Plan. Rather, the Accident Plan was presented to employees as a plan belonging to Westinghouse's benefits package and specifically endorsed by Westinghouse. Defendants' Memorandum, Exhibit "A". Moreover, Westinghouse did not only collect the insurance premiums and forward them to the insurer; as with the Insurance Plan, it also, (a) provided employees the opportunity to discuss the plan with their supervisors and (b) processed claims. *Id.,* Affidavit of John W. McCrea.

Accordingly, the Accident Plan is not excluded from the status of employee welfare plan by Regulation 2510.3–1(j). This plan is thus a plan established by an employer pursuant to Section 1002(1). *See also Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982) (establishment of plan can be determined from the surrounding circumstances); *Hamberlin v. VIP Insurance Trust,* 434 F.Supp. 1196 (D.Ariz.1977). Thus, the claims against the Accident Plan are also preempted by ERISA for the reasons announced in Section 2 above.

### 4. *Westinghouse*

Defendants' argument as to Westinghouse falls roughly into two parts. Defendants first contend that plaintiff's claims against Westinghouse, while again styled as violations of duties under the insurance contracts, are essentially claims for a breach of fiduciary duty in Westinghouse's role as a plan administrator for both plans. Defendants' Memorandum at 13–14. For defendants, therefore, Section 1144(a) preempts the entire field of fiduciary obligations relating to ERISA plans. *Id.* at 14 (citing *Russell v. Massachusetts Mutual Life Insurance Co.,* 722 F.2d 482 (9th Cir.1983)). Defendants then argue that a claim for a breach of fiduciary duty cannot arise under Section 1132(a)(1)(B) but only under (a)(2). Pursuant to Section 1132(e)(1), defendants point out, federal courts have exclusive jurisdiction over actions brought under Section 1132(a)(2). Ac-

cordingly, in defendants' view, because the state court never had jurisdiction over the claims against Westinghouse, this court can neither acquire derivative jurisdiction over those claims nor return them to the state court, but must dismiss them. *Id.* at 16 (citing *Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co.,* 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922)).

▇ I agree with defendants that the substance of plaintiff's complaint against Westinghouse is for its breach of fiduciary duty as plan administrator under ERISA for both plans—not for a breach of any duty under the insurance contracts. This means that the "savings clause" of Section 1144(b)(2)(A) is without application, and that the claims against Westinghouse are preempted by Section 1144(a). *See Powell,* No. 85–1072, slip op. at 10–11.

I do not, however, agree with defendants' further contention that the claims against Westinghouse could only be brought under Section 1132(a)(2), and hence lay outside the state court's concurrent jurisdiction, were not removable to this court, and must be dismissed. Section 1132 establishes several causes of action to promote enforcement of ERISA. A participant or a beneficiary may bring an action under Section 1132(a)(1)(B) to recover benefits under the plan or for other appropriate relief. A participant or a beneficiary may also bring an action under Section 1132(a)(2) for appropriate relief under Section 1109, which deals with liability for breach of fiduciary duty. Other provisions of Section 1132 provide still other causes of action.

▇ A plaintiff's action, therefore, may fall into one of the provisions of Section 1132 depending upon the relief the plaintiff is seeking. Thus, although the substance of plaintiff's claims against Westinghouse refers to a breach of fiduciary duty as plan administrator under ERISA, plaintiff is essentially attempting to recover benefits due to her under the terms of the plans. Accordingly, her action would fall under Section 1132(a)(1)(B), not under (a)(2).

A recent Supreme Court case, *Massachusetts Mutual Life Insurance Co. v. Rus-*

*sell,* 473 U.S. 134, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985), supports this interpretation of Section 1132. In *Russell,* a beneficiary sued her employer, an insurance company that had provided an ERISA plan, alleging ERISA and various state law claims because the employer had improperly refused to pay benefits under the plan. Although originally denied benefits, plaintiff later received them, and her suit was thus based upon an improper refusal to pay benefits between the time of denial and that of reinstatement. *Id.* at 3087.

As the Court in *Russell* observed, a plaintiff has a choice among the civil enforcement provisions of Section 1132. If a beneficiary is denied benefits, she can bring an action pursuant to Section 1132(a)(1)(B) to recover the benefits or for other appropriate relief. *Id.* at 3093. If the refusal to pay benefits is part of a "larger systematic breach of fiduciary obligations," a beneficiary can bring an action under Section 1132(a)(2). *Id.* The Court noted that, in drafting Section 1109, enforced by Section 1132(a)(2), Congress intended to prevent the misuse of plan assets, which would protect the "entire plan," and was not concerned with protecting the "rights of an individual beneficiary." *Id.* at 3090 (footnote omitted).

■ Because the thrust of plaintiff's claims against Westinghouse, while referring to its fiduciary duty under ERISA, is to recover benefits due her under the plans, these claims could properly have been brought under Section 1132(a)(1)(B). Since, pursuant to Section 1132(e)(1), state courts have concurrent jurisdiction over such a suit, the claims against Westinghouse were properly removable to this court.

### B.

*2) If any claims are identified under question 1 as a basis for removal, what would be the basis for this court's jurisdiction (1) over the claims which are not preempted and replaced by ERISA and/or (2) over the parties against whom only state law claims have been stated?*

Because the claims against the plans and Westinghouse are preempted by ERISA, there remain only the claims against Equitable, which are without dispute state law claims. The question then becomes whether this court can hear these claims pursuant to its "pendent party" jurisdiction.

The foremost decision on "pendent party" jurisdiction, *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), cautioned courts against a too ready extension of the jurisdiction of the federal courts under this concept. *Id.* at 18, 96 S.Ct. at 2422; 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3567.2 (1984). In *Aldinger,* the plaintiff had brought a Section 1983 suit against a county treasurer and county commissioners, but was unable to include the county itself within the suit because of the Section 1983 jurisprudence applicable at that time. Accordingly, she sought to bring the county into the suit on a "pendent party" theory by filing state law claims against it, although there was no independent basis for federal jurisdiction over the county. 427 U.S. at 4–5, 96 S.Ct. at 2415–16.

In refusing to allow joinder of the county as a "pendent party," the Court in *Aldinger* focused upon the interplay between Section 1343(3), which conferred jurisdiction upon the district courts for causes of action arising under Section 1983, and Section 1983 itself. *Id.* at 16–17, 96 S.Ct. at 2421–22. The Court observed that the scope of the "civil action" over which the courts were given jurisdiction pursuant to Section 1343(3) would have to be read in conjunction with Section 1983 jurisprudence. According to the Court, once viewed in this light, Section 1343(3) in the Section 1983 context should not allow courts to assert jurisdiction over a party, against whom only state law claims were alleged, when this party was excluded from liability under the very federal statute that provided the cause of action to which federal jurisdiction was extended by Section 1343(3). *Id.* at 17, 96 S.Ct. at 2421.

The *Aldinger* Court, however, limited its holding on "pendent party" jurisdiction to claims brought under Sections 1343(3) and

1983. It observed that "[o]ther statutory grants and other alignments of parties and claims might call for a different result." *Id.* at 18, 96 S.Ct. at 2422. Cautioning the courts that the "pendent party" area was "subtle and complex," the Court was reluctant to "lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction." *Id.* The Court did, however, offer two guidelines: 1) a serious obstacle to such jurisdiction might exist if the party sought to be joined is not otherwise subject to federal jurisdiction; 2) the court should consider whether the statutory scheme "expressly or by implication" forbids the assertion of such jurisdiction. *Id.*

▮ With respect to the first *Aldinger* guideline, defendants have suggested that diversity of citizenship between plaintiff and Equitable exists. The pleadings, however, are not adequate to support a finding that there is such diversity. They allege that plaintiff resides in Pennsylvania and that Equitable is an insurance carrier with a principal place of business in New York, but neither of these allegations serves to establish citizenship. *See* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 3611, 3623 (1984).

▮ Defendants also seem to suggest that Equitable is subject to federal jurisdiction because Westinghouse and the Insurance Plan have asserted cross-claims against this party. It is true that the assertion of cross-claims against a co-party pursuant to Rule 13(g) is within a court's ancillary jurisdiction; thus no independent ground of federal jurisdiction is needed. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1433 (1971). However, to argue, as here, that a particular defendant is subject to federal jurisdiction because cross-claims have been asserted against it by a co-defendant, when there is no apparent basis for federal jurisdiction over plaintiff's claims against this defendant, is truly to put the cart before the horse.

Admittedly, the "pendent party" concept is applied in the situation when a plaintiff attempts to assert a claim—over which a federal court would have no independent jurisdiction—against a third-party defend-

ant. *See, e.g., Potter v. Rain Brook Feed Co.,* 530 F.Supp. 569 (E.D.Ca.1982). Yet the applicability of this concept seems restricted to the situation where the third-party defendant is already in the suit before the assertion of plaintiff's claim against him. *Id.* at 570–71; *see generally* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3567.2 (1984).

Because defendants have not overcome the "serious obstacle" to jurisdiction, as stated in the first *Aldinger* guideline, yet because they have implied that an independent jurisdictional basis for plaintiff's claims against Equitable might exist, I am reluctant at this time either to exercise this court's jurisdiction over these claims or to remand them to the state court. On the assumption that defendants can provide additional facts that would enable this court to conclude that there is diversity of citizenship between plaintiff and Equitable, I will give defendants twenty (20) days to file further submissions on this issue.

In making their further submissions, defendants would be well advised also to provide this court with material that would aid it in following the second *Aldinger* guideline: that this court satisfy itself that Congress, in promulgating the statutes conferring jurisdiction on ERISA matters, "has not expressly or by implication negated" the existence of "pendent party" jurisdiction. Although defendants have touched upon this issue in their earlier submission, they have not adequately briefed this court on the relevant legislative history and case law.

▮ Finally, once a court determines that it has the power to permit the joinder of a pendent party, it must still determine whether such joinder is appropriate. *See* 13B C. Wright, A. Miller & E. Cooper, § 3567.2, at 160. In making this determination, a court should take into consideration the same factors that apply in the case of pendent claim jurisdiction, factors outlined by the Court in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although defendants raised the *Gibbs* factors in its

earlier submissions—a discussion I found persuasive, they would do well to apply them more directly to plaintiff's claims against Equitable.

## C.

To summarize, then, I find that all claims against the ERISA Insurance and Accident Plans and the claims against Westinghouse are preempted by Section 1144(a). Accordingly, I will deny plaintiff's motion to remand as to them. While I decline at this time to exercise pendent party jurisdiction over plaintiff's state law claims against Equitable, I reserve decision on this matter until further briefing by the parties.

An appropriate order follows.

### ORDER

For the reasons given in the attached memorandum, it is hereby ORDERED and DIRECTED that:

1) plaintiff's motion to remand as to the claims against the Westinghouse Insurance Plan, the Westinghouse Personal Accident Insurance Plan, and the Westinghouse Electric Corporation is DENIED.

2) defendants are directed to file further submissions on the issue of pendent party jurisdiction over Equitable Life Assurance Society of the United States by February 28, 1986. Plaintiff will respond to these submissions by March 14, 1986.