67 F.3d 307
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Roger LEWIS and Patricia Lewis, Plaintiffs-Appellants,
v.
U.S. WEST COMMUNICATIONS, INC. a Colorado corporation;
Richard H. Deutsche, an Individual, and John Doe
Nos. I through X, Individuals,
Defendants-Appellees.
 No. 94-35695.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 15, 1995.
Decided Sept. 28, 1995.
 
 1
 Before: ALARCON and CANBY, Circuit Judges and FITZGERALD,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Roger and Patricia Lewis ("Lewis")[1] appeal from the order granting summary judgment in favor of Lewis' former employer, U.S. West Communications, Inc. ("U.S. West") and partial summary judgment in favor of U.S. West employee, Richard H. Deutsche ("Deutsche") in Lewis' action for damages on various state law claims. Lewis contends that reversal is compelled because: (1) the district court erred in finding that Idaho's statute of limitations barred Lewis' tort claims to the extent they rely on incidents occurring more than two years before he filed his complaint; (2) the district court erred in finding that Lewis' claim against U.S. West for intentional infliction of emotional distress was barred by the exclusive remedy provisions of Idaho's worker's compensation law; and (3) the district court erred in finding that Lewis failed to present evidence demonstrating a prima facie case of constructive discharge.
 
 
 4
 We affirm because we conclude (1) Lewis' tort claims against U.S. West and Deutsche were barred by the statute of limitations to the extent they relied on incidents occurring more than two years before he filed his complaint; (2) Lewis' claim for intentional infliction of emotional distress against U.S. West was barred by Idaho's worker's compensation law; and (3) Lewis' claim for constructive discharge is preempted under Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a). We discuss Lewis' contentions and the facts pertinent thereto under separate headings.
 
 I.
 
 5
 The district court had jurisdiction under 29 U.S.C. Sec. 185(a) and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. Sec. 1367. Following the district court's certification for immediate appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,[2] this court has jurisdiction pursuant to 28 U.S.C. Sec. 1291 over Lewis' timely notice of appeal from the judgment in favor of U.S. West on all counts, and the judgment in favor of Deutsche on the count for intentional interference with economic relationship.
 
 II.
 
 6
 Lewis contends that the district court erred in finding as a matter of law that Lewis' tort claims are time barred by Idaho's statute of limitations to the extent they rely on incidents occurring prior to January 27, 1991, two years before the complaint was filed.[3] Under Idaho law, a tort cause of action alleging injury to the person is subject to a two-year statute of limitations. Idaho Code Sec. 5-219(4).[4] Lewis attempts to avoid this restriction, and recover for additional alleged violations outside the limitations period, by arguing that the underlying incidents constituted a continuing tort. We review the district court's grant of summary judgment de novo. Cleary v. News Corp., 30 F.3d 1255, 1259 (9th Cir.1994).
 
 
 7
 In Curtis v. Firth, 850 P.2d 749 (Idaho 1993), the Idaho Supreme Court extended the continuing tort concept to intentional infliction of emotional distress. Id. at 755. The court in Curtis noted, however, that the continuing tort theory will not apply unless the allegedly wrongful acts are continued, similar, and inseparable. "It is also important to note what does not constitute a continuing tort. Wrongful acts which are separate and wholly dissimilar are separate causes of action and the statute of limitations begins to run from the time of the commission of each wrongful act." Id. at 754. The court in Curtis emphasized that courts must confine application of the continuing tort concept to situations where there is no temporal interruption in the pattern of activity:
 
 
 8
 [E]mbracing this [continuing tort] concept in the area of intentional ... infliction of emotional distress does not throw open the doors to permit filing these actions at any time. The courts which have adopted this continuing tort theory have generally stated that the statute of limitations is only held in abeyance until the tortious acts cease. At that point the statute begins to run. If at some point after the statute has run the tortious acts begin again, a new cause of action may arise, but only as to those damages which have accrued since the new tortious conduct began.
 
 
 9
 Id. at 755 (citations omitted) (emphasis added). Thus, under Idaho law, the continuing tort concept may remove a time bar for activity outside the limitations period if the incidents are constant and closely related to violations occurring within the period of limitations. The extrajurisdictional cases relied on by Lewis are not to the contrary. See Hendrix v. City of Yazoo City, 911 F.2d 1102, 1103 (5th Cir.1990) (when violations occur both outside and within the statute of limitations, the continuing violation theory allows closely related wrongs to be connected as one) and Brenner v. Local 514, United Bhd. of Carpenters, 927 F.2d 1283, 1295 (3rd Cir.1991) ("[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.") (emphasis added).
 
 
 10
 A brief recitation of the facts in the case is necessary in order to assess whether the wrongful acts alleged by Lewis were continuous, similar, and inseparable. The incidents began in July of 1988 when Lewis first discovered hot sauce in his thermos. In August of 1988, Deutsche wired an electric fencer to an empty desk occasionally used by a number of employees on the second floor. After receiving a shock from the electric fencer, Lewis reported this incident to a supervisor. In response, U.S. West suspended Deutsche for one and one half days without pay, warned against similar future conduct, and required him to forfeit the electric fencer. Later in August of 1988, Deutsche placed a sign on a broken radio which said "THIS RADIO CLOSELY PARALLELS ROGAR [sic]. IT DOESN'T WORK EITHER." In the same month, several copies of an employee suggestion form were posted at the U.S. West office, stating that U.S. West should fire Lewis for malingering and other reasons. In November of 1988, Lewis reported to a supervisor that he believed some jumper wires had been cut and perhaps sabotaged. U.S. West responded by holding a meeting with Lewis' fellow office technicians concerning the cutting of the jumper wires, after which there were no more immediate incidents.
 
 
 11
 The next alleged act of harassment occurred 35 months later, in October of 1991, when co-employee Charlie Sands purportedly placed a notice on the employee bulletin board ridiculing Lewis for having spent his vacation in constructing "Condos for Christ," a derogatory reference to his participation in a church-related activity building housing for the underprivileged in Mexico.
 
 
 12
 Approximately thirteen months later, on November 3, 1992, the most serious incidents began. Lewis noticed the odor of dog feces in the area of the desk he shared with Deutsche and Don Lewis. The smell gradually faded over the next several days. A few days later the smell became very strong again and Lewis located fresh dog feces in a magnetic key holder under the desk. Lewis moved the holder to another desk in the area and at the end of his shift he returned it to the desk he shared.
 
 
 13
 On November 10, 1992, upon reporting for work between 3:00 p.m. and 4:00 p.m., Deutsche discovered a piece of dog feces in the desk drawer where he kept his eating utensils. Another employee informed Deutsche that Lewis was responsible, and Deutsche retaliated by placing the piece of dog feces in Lewis' thermos. Lewis took a drink of tea from his thermos. Beginning the next day, Lewis began experiencing symptoms of diarrhea. Lewis did not report the incident to his supervisor until the next day, at which time the supervisor talked with Deutsche about Lewis' claim and warned Deutsche not to harass Lewis. Shortly after the dog feces incident, Deutsche wrote one note on the company bulletin board referring to a dog "shit[ting]" in a thermos and another note on the company blackboard which stated "shit happens."
 
 
 14
 On November 16, 1992, U.S. West relocated the Alarm Center from the second to the sixth floor. Two of the employees Lewis claimed had harassed him, Charlie Sands and Jim Brooks, remained on the second floor. After he was moved to the sixth floor, the only harassment Lewis contends he experienced was the removal of pens and pencils from his desk on one occasion. Lewis resigned the next month.
 
 
 15
 Because the first set of incidents relied upon by Lewis as supporting his claims commenced and ceased in 1988, the statute of limitations for this conduct expired in 1990. All subsequent alleged incidents, including the note referring to Lewis's participation in housing construction which was posted on the employee bulletin board in October 1991, the dog feces incidents in November 1992, and the removal of pens and pencils from his desk, occurred almost three years later and thus are separate acts.
 
 
 16
 We reject Lewis' attempt to link the 1988 and 1992 conduct by stating that between "November, 1988 to November, 1992, fellow employees Sands, Jim Brooks, and Defendant Deutsche continually verbally belittled and made fun of Plaintiff's religious beliefs." There is no support for this statement in the record. Consequently, the district court properly barred Lewis' tort claims to the extent they rely on incidents occurring more than two years before the complaint was filed.
 
 III.
 
 17
 Lewis next asserts that the district court erred in determining as a matter of law that his derivative claim for intentional infliction of emotional distress against U.S. West was barred by the exclusive remedy provisions of Idaho's worker's compensation law, Idaho Code Sec. 72-201 et seq. Idaho's worker's compensation law provides the exclusive remedy for an employee against his or her employer for injuries arising out of and in the course of employment. Idaho Code Secs. 72-201, 72-209, and 72-211.[5] Psychological conditions, such as emotional distress, are also subject to the exclusive remedy provisions of the worker's compensation laws to the extent they are "traceable in part to an industrial accident and injury[.]" Yeend v. United Parcel Serv., Inc., 659 P.2d 87, 88 (Idaho 1982). There is, however, a limited exception to exclusivity in cases where an injury is caused by "wilful or unprovoked physical aggression of the employer, its officers, agents, servants, or employees, the loss of exemption applying only to the aggressor and shall not be imputable to the employer unless provoked or authorized by the employer, or the employer was a party thereto." Idaho Code Sec. 72-209(3). Conversely, intentional conduct by an employee which is not authorized or provoked by the employer remains subject to the exclusive remedy provisions. Id.
 
 
 18
 Lewis recognizes that the worker's compensation law provides the exclusive remedy to employees for injuries arising out of and in the course of employment, but argues that his intentional infliction of emotional distress claim is not covered by the act and thus is compensable in a separate action for damages. See Yeend, 659 P.2d at 88 ("To recover in a separate action against an employer, a plaintiff must allege the existence of a tort not covered by the workmen's compensation statute.").
 
 
 19
 In support of this argument, Lewis contends that (1) Deutsche's conduct was not an "accident" within the meaning of the statute; (2) Lewis' emotional distress was not an "injury" within the meaning of the statute; (3) U.S. West provoked or authorized the wrongful conduct of its employees; (4) the district court erroneously relied upon Yeend, 659 P.2d at 87; (5) the district court should have followed other persuasive authority which clearly concludes that emotional distress is a non-physical injury and therefore an exception to the exclusive remedy provision; (6) Lewis has suffered severe emotional distress; and (7) Deutsche's intentional acts should be imputed to U.S. West.
 
 
 20
 Lewis first asserts that the worker's compensation law only covers an "injury" resulting from an "accident" and that the intentional infliction of emotional distress by Deutsche and other employees of U.S. West was not an "accident" or an "injury" within the meaning of the statute.[6] Lewis' contention that the intentional conduct cannot qualify as an "accident" because it is not unexpected is without merit. In Idaho, intentional conduct, such as an assault at the workplace, is subject to exclusivity unless the assault is "inherently personal and private in origin, which assaults arise from disputes imported by the employee from outside the sphere of employment[.]" Cahala v. OK Tire Store, 739 P.2d 319, 320 (Idaho 1987) (citations omitted). Assaults arising out of work disputes as well as "neutral" assaults, which can neither be assigned to employment nor personal disputes, are compensable under the worker's compensation scheme. Id. Because we conclude that Lewis' injuries resulted from intentional conduct arising out of his workplace performance, the injuries qualify as an accident subject to exclusivity under Idaho's worker's compensation law.
 
 
 21
 Lewis' related contention that he did not suffer "injury" under the act is also unpersuasive. The Idaho Supreme Court has limited the preclusive effect of that state's worker's compensation law in a claim for emotional distress "to the extent it is traceable in part to an industrial accident or injury[.]" Yeend, 659 P.2d at 88. Because injury, in turn, is defined in pertinent part as "violence to the physical structure of the body," Lewis argues he has "not alleged that Deutsche and other employees of US West have, in one single or a continuous string of violent events, exerted any force to his physical being." Rather, Lewis contends that the incidents affected his emotional state and that any physical symptoms, such as inability to sleep and diarrhea, were offered merely to demonstrate the severity of the emotional harm he experienced.
 
 
 22
 Lewis' position that his emotional distress did not arise from, at least in part, "violence to the physical structure of the body" is disingenuous. Lewis' allegations in his complaint state that he was "subject to harassment, discrimination, injury, illness and disease by fellow employees," that "Deutsche was the instigator and primary implementer of the discrimination, mental and physical injury suffered by Plaintiff from July, 1988 through January, 1993," and that U.S. West caused Lewis to suffer "damages and losses that included physical and mental suffering, humiliation, degradation, insult and disease." (emphasis added). In his briefs before the district court and this court, Lewis focuses upon the incident where he ingested dog feces. The invasion of a foreign substance certainly should be characterized as violence to the physical structure of the body. We therefore reject Lewis' semantic arguments that intentional infliction of emotional distress is not an "accident" or "injury" within the meaning of the worker's compensation law.
 
 
 23
 Lewis next disputes the district court's finding that U.S. West did not provoke or authorize the wrongful conduct of its employees. Lewis argues that because U.S. West knew of the propensities of Deutsche and others to engage in malicious horseplay, U.S. West provoked or authorized its employees' physical aggression. This assertion is not supported by the undisputed facts in the record. As a result of Lewis' reports of the harassing conduct by his co-employees, U.S. West took corrective actions, such as suspending Deutsche without pay and holding a meeting to reprimand the workers in order to curb the employee horseplay. Lewis does not allege that any harassing conduct occurred for almost three years following U.S. West's remedial action regarding the 1988 incidents. Upon being advised by Lewis of the dog feces incident in 1992, U.S. West again addressed the problem by warning Deutsche and relocating Lewis. Lewis did not complain of any further acts of harassment after his relocation, other than removal of pens and pencils from his desk, in his final six weeks of employment. The record thus shows that U.S. West took corrective action each time Lewis reported an incident. Lewis never filed a grievance nor did he request a transfer. Accordingly, Lewis has failed to demonstrate that U.S. West provoked or authorized the wrongful conduct of its employees.
 
 
 24
 Lewis' remaining contentions pertaining to the exclusive remedy provisions of the worker's compensation law may be dismissed without extensive discussion. Lewis' attempt to distinguish the underlying facts in Yeend, 659 P.2d at 87 is inapposite. Because Lewis' emotional distress arose at least in part from a physical injury, Yeend sets forth applicable law.[7] We also reject Lewis' argument that this court's interpretation of the Oregon worker's compensation scheme in Dias v. Sky Chefs, Inc., 919 F.2d 1370 (9th Cir.1990), vacated and remanded, 501 U.S. 1201, aff'd on remand, 948 F.2d 532 (1991), cert. denied, 503 U.S. 920 (1992), the California worker's compensation scheme in Russell v. Massachusetts Mut. Life Ins. Co., 722 F.2d 482 (9th Cir.1983), rev'd, 473 U.S. 134 (1985), and a district court's interpretation of the Colorado worker's compensation act in Vigil v. Safeway Stores, Inc., 555 F.Supp. 1049 (D.Colo.1983) requires reversal. These cases merely support the proposition that when intentional infliction of emotional distress is not based on a physical injury, the tort does not come within the purview of the worker's compensation laws. Because Lewis alleges psychological injury arising at least in part from physical injury caused by the ingestion of dog feces from his thermos, Dias, Russell, and Vigil are consistent with the conclusion reached by the district court. Lewis' penultimate contention, that he suffered severe emotional distress, has no effect on the propriety of the district court's conclusion. Finally, Lewis argues that the "willful, knowing, and malicious acts of the employees of U S West should be imputable to U S West under the doctrine of respondeat superior." This allegation does not advance Lewis' cause because, even if the intentional acts of co-employees are imputed to U.S. West, the Idaho Code Sec. 72-209(3)[8] provides that the loss of exemption is not imputable.
 
 
 25
 Because U.S. West's numerous bases for appeal are unpersuasive, we affirm the district court's conclusion that Lewis' claim for intentional infliction of emotional distress against U.S. West is barred by the exclusive remedy provisions of Idaho's worker's compensation law.
 
 IV.
 
 26
 Lewis finally contends that the district court erred in finding that Lewis failed to present evidence that demonstrates a prima facie case of constructive discharge. The district court concluded that Lewis failed to show a requisite aggravating factor, such as a continuous pattern of harassment, but demonstrated only isolated incidents of harassing conduct which were insufficient to sustain a claim for constructive discharge. We hold that the district court properly dismissed Lewis' claim for constructive discharge on the alternative ground that the claim is preempted under Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a). See Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990) ("In reviewing decisions of the district court, the court of appeals may affirm on any ground finding support in the record.").
 
 
 27
 Under Idaho law, "[u]nless an employee is hired pursuant to contract which specifies the duration of employment, or limits the reasons why the employee may be discharged, the employment is 'at-will;' either party may terminate the relationship at any time without incurring liability." Nilsson v. Mapco, 764 P.2d 95, 99 (Idaho Ct.App.1988) (citing, inter alia, MacNeil v. Minidoda Memorial Hosp., 701 P.2d 208 (1985)). Lewis has failed to demonstrate that he was employed by U.S. West pursuant to a personal employment contract.
 
 
 28
 Rather, Lewis' employment at U.S. West was subject to a collective bargaining agreement at all times relevant to this case.[9] Both the 1989 and 1992 collective bargaining agreements contain exhaustive grievance, mediation, and arbitration procedures specifically applicable to termination. The agreements also contain provide details regarding the voluntary separation plan. Accordingly, Lewis' remedy, if any, for the alleged constructive discharge is a claim brought pursuant to Section 301(a) of the Labor Management Relations Act. Because Lewis concedes that he failed to follow the mandatory grievance procedures provided in the collective bargaining agreements, his allegation of constructive discharge fails, even if treated as Section 301 claim. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985) (tort as well as contract claims may be preempted by Section 301). Because we are persuaded that Lewis' claim for constructive discharge was preempted by federal law, we need not decide whether Lewis' failed to present evidence demonstrating a prima facie case of constructive discharge.
 
 
 29
 We therefore AFFIRM the judgment in favor of U.S. West on all counts, and the judgment in favor of Deutsche on the count for intentional interference with economic relationship.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Patricia Lewis is named in the complaint only to the extent she seeks loss of consortium. The district court's rejection of her loss of consortium claim is not raised as an issue in this appeal. Accordingly, we refer hereinafter to Roger Lewis as the only appellant
 
 
 [2]
 Fed.R.Civ.P. 54(b) provides, in pertinent part, as follows:
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
 
 
 [3]
 The district court ruled: "Lewis is not time-barred with respect to any of the conduct which allegedly lead to his constructive discharge from US West ... [but] insofar as they rely on individual incidents which occurred prior to January 27, 1991, Lewis' [other] tort claims against US West [and Deutsche] are time barred by Idaho's statute of limitation."
 
 
 [4]
 Idaho Code Sec. 5-219(4) (1990) provides, in pertinent part, that:
 An action to recover damages ... for injury to the person ... shall be deemed to have accrued ... two (2) years following the occurrence, act or omission complained of ...
 
 
 [5]
 Idaho Code Sec. 72-201 (1989) provides, in pertinent part, that:
 The state of Idaho, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for injured workmen and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation[.]
 Idaho Code Sec. 72-209 (1989) provides, in pertinent part, that:
 [T]he liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee, his spouse, dependents, heirs, legal representatives, or assigns.
 Idaho Code Sec. 72-211 (1989) provides, in pertinent part, that:
 [T]he rights and remedies herein granted to an employee on account of an injury or occupational disease for which he is entitled to compensation under this law shall exclude all other rights and remedies of the employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or disease.
 
 
 [6]
 Idaho Code Sec. 72-102(15) (Supp.1994) provides the following definitions:
 (a) "Injury" means a personal injury caused by an accident arising out of and in the course of any employment covered by the workmen's compensation law.
 (b) "Accident" means an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury.
 (c) "Injury" and "personal injury" shall be construed to include only an injury caused by an accident, which results in violence to the physical structure of the body. The terms shall in no case by construed to include an occupational disease and only such nonoccupational disease as result directly from an injury.
 
 
 [7]
 Lewis also attacks the district court's reliance on Hansen v. Estate of Harvey, 806 P.2d 426 (Idaho 1991) for the proposition that Lewis is limited to pursuing a worker's compensation claim for emotional distress. This mischaracterizes the district court's opinion because it did not rely upon Hansen as an emotional distress case
 
 
 [8]
 The complete text of Idaho Code Sec. 72-209(3) (1989) provides:
 The exemption from liability given an employer by this section shall also extend to the employer's surety and to all officers, agents, servants and employees of the employer or surety, provided that such exemptions from liability shall not apply in any case where the injury or death is proximately caused by the wilful or unprovoked physical aggression of the employer, its officers, agents, servants, or employees, the loss of such exemption applying only to the aggressor and shall not be imputable to the employer unless provoked or authorized by the employer, or the employer was a party thereto.
 
 
 [9]
 There were two agreements between U.S. West and the Communications Workers of America. The first was effective August 13, 1989 through August 15, 1992, and the second was effective August 16, 1992 until the time of Lewis' separation